*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 48**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BARBARA BAGLEY, as the sole heir of
the deceased BRADLEY M. VOM BAUR;
and BARBARA BAGLEY, as personal
representative of the estate of
BRADLEY M. VOM BAUR,
*Respondent,*

*v.*

BARBARA BAGLEY,
*Petitioner.*

No. 20150182
Filed October 27, 2016

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Paul G. Maughan
No. 130903840

Attorneys:

Peter H. Christensen, Jennifer R. Carrizal, Kathryn T. Smith,
Salt Lake City, for petitioner

Reid Tateoka, Mark C. Rose, Cameron J. Cutler, Salt Lake City,
for respondent

David S. Bridge, Anna Nelson, Salt Lake City, for amicus
Utah Defense Lawyers Association

CHIEF JUSTICE DURRANT authored the opinion of the court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, JUSTICE HIMONAS, and
JUDGE KAY joined.

Having recused himself, JUSTICE PEARCE did not participate herein;
SECOND DISTRICT COURT JUDGE THOMAS L. KAY sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶ 1   This case is about whether a person acting in the capacity of sole heir and personal representative of an estate can sue him or herself as an individual for damages under the wrongful death and survival action statutes. Barbara Bagley, in her capacity as sole heir and personal representative of her deceased husband's estate, argues that these statutes permit her to sue herself as an individual for negligently causing her husband's death. Through this suit, Ms. Bagley hopes to secure certain insurance money for herself as heir and to satisfy creditors of her common law husband's estate. The district court dismissed her lawsuit, concluding that the plain language of the statutes and certain public policies precluded a person from simultaneously acting as plaintiff and defendant in a wrongful death or survival action suit, regardless of the capacity in which that person was acting. The court of appeals reversed, concluding that the statutes unambiguously allow Ms. Bagley to maintain this lawsuit. We agree with the court of appeals. We also note that the public policies cited by the district court (policies that Ms. Bagley in her individual capacity invokes on appeal) deal with the separate issue of whether an heir or personal representative who is negligent in his or her individual capacity and is permitted to sue for damages under the wrongful death and survival action statutes can, nevertheless, as an heir recover money paid as damages from such a suit. That issue is not before us on appeal.

### Background

¶ 2   Barbara Bagley is the common law wife of the decedent, Bradley Vom Baur. On December 27, 2011, Ms. Bagley and Mr. Vom Baur were travelling in a 2000 Range Rover. Ms. Bagley lost control of the Range Rover and flipped the vehicle. Mr. Vom Baur was thrown from the vehicle and sustained several severe injuries. Paramedics transported Mr. Vom Baur to a local hospital for treatment. Ten days later, on January 6, 2012, Mr. Vom Baur died from the injuries he sustained in the accident.

¶ 3  Ms. Bagley maintained a motor vehicle insurance policy with State Farm Insurance Company.[1] To compel State Farm to indemnify her, Ms. Bagley, in her dual capacities as sole heir and

---

[1] The record does not reveal whether she made a claim against State Farm for damages under her insurance policy.

personal representative of the estate of Bradley Vom Baur (Plaintiffs), brought this suit against herself as an individual (Defendant) on June 7, 2013.[2] Plaintiff Bagley, as Mr. Vom Baur's heir, brought her first cause of action pursuant to Utah Code section 78B-3-106, Utah's wrongful death statute, alleging that Defendant negligently caused Mr. Vom Baur's death, thereby depriving his sole heir of Mr. Vom Baur's love, companionship, society, comfort, care, protections, financial support, pleasure, and affection. Plaintiff Bagley, as the personal representative of Bradley Vom Baur's estate, brought her second cause of action pursuant to Utah Code section 78B-3-107, Utah's survival action statute, alleging that Defendant negligently caused Mr. Vom Baur to experience pain and suffering prior to his death, which entitles Mr. Vom Baur's estate to damages such as funeral expenses and medical bills.

¶ 4 In response, Defendant filed a rule 12(b)(6) motion to dismiss for failure to state a claim. She argued that the plain language of the previously referenced statutes prevents a person from suing him or herself, thereby barring Plaintiffs' (Bagley as both heir and personal representative) claims. Defendant attempted to reinforce this statutory argument by citing cases from foreign jurisdictions that have precluded a person from bringing suit against him or herself based on comparative negligence principles and public policy.

¶ 5 Without a hearing, the district court by minute entry ruled in favor of Defendant. The district court concluded that "[t]he plain reading of the [wrongful death] statute indicates that the heir/personal representative and the 'person causing the death' cannot be one and the same" and "a wrongdoer who is the heir and/or personal representative of decedent cannot bring a survival action against him or herself for special or general damages." The court also concluded that the plain language of the statutes, which preclude a wrongdoer from suing, comported with Utah's public policy considerations.

¶ 6 Plaintiffs appealed, and the court of appeals reversed the district court's ruling, holding that "[t]he plain language of the

---

[2] Though Ms. Bagley in her dual capacities as personal representative and heir of the estate of Bradley Vom Baur is before us as the respondent, and Ms. Bagley in her individual capacity is before us as the petitioner, for ease of analysis we refer to these parties as Plaintiffs and Defendant respectively.

wrongful death and survival action statutes does not bar an heir or personal representative from pursuing those causes of action even when the heir or personal representative is the defendant tortfeasor."[3] The court of appeals thus concluded that "[t]he district court . . . erred by dismissing those causes of action."[4] We granted a writ of certiorari to review the court of appeals' decision.

**Standard of Review**

¶ 7   The issue on appeal is whether the court of appeals correctly interpreted sections 78B-3-106 and 78B-3-107 of the Utah Code as allowing a person acting in the legal capacities of an heir and personal representative to sue him or herself as a defendant tortfeasor for damages. The appropriate interpretation of these statutes is a question of law that we review for correctness.[5] Because this case arises from a rule 12(b)(6) motion to dismiss, we accept the facts set forth in the complaint as true.[6] This court has jurisdiction over this matter pursuant to Utah Code section 78A-3-102(3)(a).

**Analysis**

¶ 8   The court of appeals correctly concluded that the wrongful death statute and the survival action statute allow a person to act as an heir or personal representative to sue him or herself as an individual defendant for damages. Contrary to Defendant's argument, interpreting the statutes in this manner does not lead to a result so overwhelmingly absurd that we must (pursuant to our absurdity doctrine) modify the statutory language to prevent such a lawsuit. Further, we decline Defendant's invitation to look beyond the plain language of the statutes to identify the legislature's intent in relation to the statutes. The statutes unambiguously apply to the circumstances of this case and permit Plaintiffs to sue Defendant. Public policies and related statutes cited by Defendant speak more directly to the separate issue of whether a defendant tortfeasor who is permitted to bring suit as an heir or personal representative of an estate can recover insurance money paid as damages in a wrongful

---

[3] *Bagley v. Bagley*, 2015 UT App 33, ¶ 19, 344 P.3d 655.

[4] *Id.*

[5] *Dahl v. Dahl*, 2015 UT 79, ¶ 155, --- P.3d --- (citing *Baird v. Baird*, 2014 UT 08, ¶ 16, 322 P.3d 728).

[6] *Gregory v. Shurtleff*, 2013 UT 18, ¶ 8, 299 P.3d 1098.

death or survival action suit. This is a question we do not reach on this appeal. As we discuss below, Defendant's failure to distinguish between these separate issues—the first, an issue of statutory interpretation; the second, an issue of ultimate recovery of damages—has caused unnecessary confusion in her arguments. We therefore distinguish between these issues, affirming the court of appeals' decision while remanding to permit further litigation on the issue of recovery.

### I. Neither the Wrongful Death Statute nor the Survival Action Statute Precludes a Person Acting in the Capacity of an Heir or Personal Representative from Suing Him or Herself as an Individual for Negligently or Wrongfully Causing a Decedent's Injury or Death

¶ 9 Defendant argues that the plain language of Utah's wrongful death statute (Utah Code section 78B-3-106) and survival action statute (Utah Code section 78B-3-107) precludes an heir or personal representative from bringing suit against him or herself for damages. Plaintiffs argue that neither statute precludes a person from simultaneously acting as a plaintiff heir or personal representative and defendant tortfeasor. Like the court of appeals, we agree with Plaintiffs. The literal language of the aforementioned statutes permits a lawsuit like the one currently before this court.

¶ 10 The "primary objective" of statutory interpretation "is to ascertain the intent of the legislature."[7] Since "'[t]he best evidence of the legislature's intent is the plain language of the statute itself,' we look first to the plain language of the statute."[8] In so doing, "[w]e presume that the legislature used each word advisedly."[9] We also "'presume[] that the expression of one [term] should be interpreted as the exclusion of another[,]' . . . . [thereby] presuming all omissions to be purposeful."[10] When we can ascertain the intent of the legislature from the statutory terms alone, "no other interpretive

---

[7] *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (citation omitted).

[8] *Id.* (alteration in original) (citation omitted).

[9] *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 2011 UT 54, ¶ 21, 266 P.3d 751 (citation omitted).

[10] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (first and second alterations in original) (citation omitted).

tools are needed," and our task of statutory construction is typically at an end.[11]

¶ 11 This case requires us to interpret two related statutes: the wrongful death and survival action statutes. Plaintiff as heir seeks damages under Utah's wrongful death statute for the loss of Mr. Vom Baur's love, companionship, society, comfort, care, protections, financial support, pleasure, and affection. That statute provides, in pertinent part,

> Except as provided in Title 34A, Chapter 2, Workers' Compensation Act, when the death of a person is caused by the wrongful act or neglect *of another*, *his heirs, or his personal representatives for the benefit of his heirs*, may maintain an action for damages *against the person causing the death*, or, if the person is employed by another person who is responsible for his conduct, then against the other person.[12]

Similarly, Plaintiff as personal representative sues Defendant for damages caused by the "pain and suffering" that Mr. Vom Baur experienced "prior to his death." The survival action statute provides that

> [a] cause of action arising out of personal injury to a person, or death caused by the wrongful act or negligence *of another*, does not abate upon the death of the wrongdoer or the injured person. *The injured person, or the personal representatives or heirs of the person who died*, has a cause of action *against the wrongdoer* or the personal representatives of the wrongdoer for special and general damages, subject to Subsection (1)(b).[13]

---

[11] *Id.* ¶ 15 (citation omitted).

[12] UTAH CODE § 78B-3-106(1) (emphases added).

[13] *Id.* § 78B-3-107(1)(a) (emphases added). The survival action statute has since been amended. It now provides that "[a] cause of action arising out of a personal injury to a person, or death caused by the wrongful act or negligence of *a wrongdoer*, does not abate upon the death of the wrongdoer or the injured person." *Id.*(2014) (emphasis added). Neither Defendant nor Plaintiffs argue that this amendment is significant to our legal analysis.

Defendant, in response, propounds duplicate arguments with respect to each statute in an attempt to show that the plain language prevents Plaintiffs' lawsuit.

¶ 12 Defendant first argues that the legislature employed the term "of another" in both statutes to exclude negligent heirs or negligent personal representatives from acting as plaintiffs in a wrongful death or survival action suit. Next, Defendant argues that both statutes place the person who can sue for damages in a category that is exclusive from the person against whom suit can be brought, expressing a legislative intent to require different persons to act as plaintiff and defendant. We address and reject each of Defendant's arguments, concluding that the plain language of the wrongful death and survival action statutes does not prevent a person who is acting in the legal capacity of heir or personal representative from suing him or herself (in an individual capacity) for negligently causing a decedent's injury or death.

¶ 13 As noted, Defendant first asks us to read "of another" in both the wrongful death and survival action statutes to modify "heirs" (wrongful death statute) and "personal representative" (survival action statute) in such a way to mean that the person against whom suit is brought must be someone other than the "heir" and "personal representative." This reading would distort the grammatical structure and meaning of both statutes.

¶ 14 Interpreting the wrongful death statute, the court of appeals persuasively observed:

> the absence of punctuation marks separating 'death of a person' from 'of another' signifies that the two are connected and that they are separate from the other clauses in the statute. Plainly read, [the wrongful death statute] uses the phrase 'of another' to mean a person other than the decedent. This reading evidences a legislative intent to exclude situations in which the decedent's own wrongful act or neglect caused his death.[14]

This interpretation is supported by the language and structure of the wrongful death statute and this court's precedent.[15] In fact, to

---

[14] *Bagley v. Bagley*, 2015 UT App 33, ¶ 10, 344 P.3d 655.

[15] *See Van Wagoner v. Union Pac. R.R. Co.*, 186 P.2d 293, 303 (Utah 1947) (interpreting the predecessor to the current wrongful death

(Continued)

achieve Defendant's recommended interpretation, we would need to read the wrongful death statute as follows: "when the death of a person is caused by the wrongful act or neglect of [someone other than his or her heirs or personal representatives], his heirs . . . may maintain an action for damages against the person causing the death[.]" This we cannot do. Accordingly, we reject Defendant's attempt to interpret "of another" to preclude the type of wrongful death suit at issue here.

¶ 15 The survival action statute would be similarly distorted were we to read "of another" in the way Defendant recommends. In fact, to ensure that "of another" modifies "personal representative," we would need to copy "of another" and paste it into the second sentence of the statute. Again, as the court of appeals aptly observed: "'of another' does not appear in the same sentence as the list of people [personal representative included] who may bring a cause of action."[16] We cannot read the statute in this manner to prevent Ms. Bagley acting in the distinct legal capacity of personal representative plaintiff from suing herself in her individual capacity as a defendant. As with the wrongful death statute, the term "of another" modifies the *injured decedent* to exclude a survival action suit in situations where the decedent "solely or proximately contributes negligently to his own [injury or] death."[17] Defendant's reliance on "of another" to achieve her desired reading of these statutes is untenable.

¶ 16 Defendant's second argument focuses on the categories of plaintiffs and defendants that each statute establishes. Under the wrongful death statute, a decedent's "*heirs . . . may maintain an action for damages against the person causing the death*."[18] Similarly, under the survival action statute, "[a] *personal representative*[] . . . of the person who died, has a cause of action *against* the *wrongdoer*."[19] As an initial matter, Defendant finds the term "against" in both statutes significant. This single term, Defendant argues, expresses the legislature's intent that "the interests of the . . . plaintiff be

---

statute to preclude recovery "where the deceased either solely or proximately contributes negligently to his own death").

[16] *Bagley,* 2015 UT App 33, ¶ 13.

[17] *Van Wagoner*, 186 P.2d at 303 (interpreting the predecessor to the current wrongful death statute).

[18] UTAH CODE § 78B-3-106(1) (emphases added).

[19] *Id.* § 78B-3-107(1)(a) (emphases added).

adverse to the interests of the . . . defendant." When the defendant and plaintiff in a wrongful death or survival action suit are the same person, Defendant contends that "there are no adverse interests and therefore, the two sides of litigation cannot actually be 'against' one another."

¶ 17 Defendant next focuses on the statutory distinction between "heirs" and "personal representatives," on the one hand, and "the person causing the death" and "the wrongdoer," on the other. She claims that "the legislature intentionally used different and distinct phrases to individually define the scope of individuals entitled to bring a wrongful death [or survival action] claim from the scope of individuals against whom a wrongful death [or survival action] claim can be asserted." In other words, these categories of plaintiffs and defendants are mutually exclusive.

¶ 18 We find these arguments unpersuasive. First, Defendant's argument that "against" evinces the legislature's intent that plaintiffs and defendants be adverse, which therefore requires separate persons to act as plaintiff and defendant, overlooks the fact that in this case Ms. Bagley acts in distinct legal capacities. These legal capacities ensure adverseness. Ms. Bagley as heir and personal representative is incentivized to diligently litigate to obtain money for Mr. Vom Baur's heir and estate. Ms. Bagley as tortfeasor defendant is likewise incentivized to diligently litigate because a failure to cooperate with her insurer in mounting a defense would breach the insurance agreement and absolve her insurer of any obligation to pay insurance money as damages in this suit. Though the statutes require adverseness, that requirement is met here because of the distinct legal capacities inhabited by Ms. Bagley. A different person acting as plaintiff and defendant is not necessary in this case.

¶ 19 We also find Defendant's mutual exclusivity argument unpersuasive. In the wrongful death statute, the terms "heirs" and "the person causing the death" do not exclude each other. The statute defines "heir[]" to include a decedent's spouse, children, natural parents, adoptive parents, or financially dependent stepchildren in their minority.[20] The term "the person causing the death," though not statutorily defined, straightforwardly means a person who actually and proximately caused the death of the

---

[20] *Id.* § 78B-3-105.

decedent.[21] The former term, "heir," can, therefore, logically include the latter term, "the person causing the death," such that an heir, like Ms. Bagley, could be the person who caused the decedent's death.

¶ 20 Similarly, in the survival action statute, the categories "personal representative[]" and "the wrongdoer" are not mutually exclusive. The first category is broad enough to logically include the second category. A personal representative who wrongly injures the decedent can inhabit the roles of both plaintiff and defendant under the statute. Neither statute employs mutually exclusive categories.

¶ 21 Accordingly, we reject Defendant's interpretations of the wrongful death and survival action statutes as untenable. Neither "of another," "against," nor discrete categories of plaintiffs and defendants evinces legislative intent to prevent a person, acting as an heir or personal representative, from suing him or herself as an individual for negligently causing a decedent's injury or death. These statutes simply do not require a plaintiff to be a different person than the defendant.[22]

---

[21] The term "the person causing the death" appears to have an antecedent in the statute, namely, "of another." *See supra* ¶ 14; *see also Bagley*, 2015 UT App 33, ¶ 10 ("Plainly read, [the wrongful death statute] uses the phrase 'of another' to mean a person other than the decedent. This reading evidences a legislative intent to exclude situations in which the decedent's own wrongful act or neglect caused his death.").

[22] Section 106.5 of the same chapter supports our reading of sections 106 and 107. That chapter allows a "presumptive personal representative" to present a policy claim to an insurer forty-five days after the decedent's death when "no application or petition for the appointment of a personal representative is pending or has been granted in any jurisdiction." UTAH CODE § 78B-3-106.5(2)(a)(iii). The chapter defines "presumptive personal representative" to exclude "the spouse of the decedent . . . alleged to have contributed to the death of the decedent." *Id.* § 78B-3-106.5(1)(a). In other words, the statute allows a presumptive personal representative, which cannot include a spouse who contributed to a decedent's death, to submit a claim to an insurer when no personal representative has yet been appointed at probate. Significantly, we cannot find any provision in Utah's probate code that precludes a spouse who contributed to the decedent's death from being appointed as a personal representative. *See id.* § 75-3-203. Thus, under section 106.5 the legislature

(Continued)

¶ 22 While we have concluded that Defendant's plain language arguments fail, that does not end our analysis. She asks us, in the alternative, to employ our absurdity doctrine to reform the plain language of the statutes to prevent the same person from simultaneously acting as plaintiff and defendant under the statutes. We address this request below, distinguishing between our absurdity doctrine and our absurd consequences canon. We ultimately conclude that permitting a tortfeasor defendant to also act as a plaintiff heir or personal representative does not lead to an absurd result of sufficient magnitude to justify our rewriting the statutes to read as Defendant prefers.

## II. The Wrongful Death and Survival Action Statutes Do Not Merit Revision Under Our Absurdity Doctrine

¶ 23 As we concluded above, the plain language of both the wrongful death and survival action statutes permit a person acting as an heir or personal representative to sue him or herself as an individual for damages. Defendant asks us to revise both statutes to avoid this plain language result. In this request, she is accompanied by *amicus curiae* Utah Defense Lawyers Association. In response, Plaintiffs argue that (1) Defendant failed to preserve this absurdity argument; (2) even if she did preserve the argument, she misconstrues the absurdity analysis, which applies only where a statute is ambiguous; and (3) even if the doctrine applies, a rational legislative purpose prevents this court from rewriting the statute to preclude an heir or personal representative from bringing suit against the same person in his or her capacity as an individual tortfeasor.

¶ 24 We reject Plaintiffs' preservation argument. We also take this opportunity to clarify the difference between the absurd consequences canon (which Plaintiffs invoke) and the absurdity

---

contemplated that a spouse who contributed to the decedent's death and who could seek appointment as the personal representative, nevertheless could not act as a presumptive personal representative for the limited purposes of making insurance claims prior to the appointment. The fact that the legislature has not similarly excluded spouses who contribute to the decedent's death from suing as an "heir" or "personal representative" under sections 106 and 107—despite the fact that those sections were amended subsequent to the enactment of section 106.5—suggests that we should not create such an exclusion ourselves.

doctrine (which Defendant invokes). The former interpretive tool applies to ambiguous statutes; the latter, to unambiguous statutes that lead to an absurd result. We ultimately agree with Plaintiffs: a possible, rational legislative purpose requires us to refrain from rewriting the statutes in the way Defendant recommends.

¶ 25 On appeal, Defendant devotes several pages of briefing to argue that "[t]he Court of Appeals' interpretation of [the wrongful death and survival action statutes] works an absurd result and[,] therefore, should be reversed." Plaintiff claims, in response, that Defendant "waived her absurd result argument by failing to assert, plead, argue, or brief the issue before the district court and the court of appeals."

¶ 26 While Plaintiff correctly observes that Defendant did not specifically raise an absurd results argument below, this is ultimately immaterial for one simple reason: Defendant's absurd result argument does not raise a wholly new issue.[23] Instead, she offers an argument in support of a particular issue already preserved on appeal. As noted above, the issue on appeal is whether the wrongful death and survival action statutes allow an heir or personal representative to stand in the shoes of a tortfeasor defendant. Where the best reading of these statutes is directly before us on appeal, an absurdity analysis is an integral extension of our interpretive task. Our failure to entertain Defendant's absurdity argument may lead us

---

[23] *Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998 (entertaining an argument that the State fully articulated for the first time on appeal since "*[i]ssues* must be preserved, not arguments for or against a particular ruling on an issue raised below"); *see also Jacob v. Bezzant*, 2009 UT 37, ¶ 34, 212 P.3d 535 (declining to entertain plaintiff's argument offered for the first time on appeal that the Anti-SLAPP Act violated the open courts clause of the Utah Constitution because the relevant issue on appeal was whether the Anti-SLAPP Act shielded a newspaper editor's speech); *Patterson v. Patterson*, 2011 UT 68, ¶ 13, 266 P.3d 828 (noting that the because "preservation requirement is self-imposed and is therefore one of prudence rather than jurisdiction[,] . . . we [retain] wide discretion when deciding whether to entertain or reject matters that are first raised on appeal").

to misconstrue both statutes. Accordingly, we reach this argument to fully address the issue on appeal.[24]

¶ 27 Plaintiff argues that even if Defendant preserved the absurdity doctrine argument, that doctrine "should only be invoked in situations [w]hen statutory language plausibly presents the court with two alternative readings." This is incorrect. "Our caselaw recognizes two different interpretive tools concerning absurdity."[25] The first—the absurd consequences canon—"merely resolve[s] an ambiguity by choosing 'the reading that avoids absurd results.'"[26] The second—the absurdity doctrine—"reform[s] unambiguous statutory language" where the language would lead to an absurd result.[27] In this case, Defendant asks us to apply the absurdity doctrine to interpret the wrongful death and survival action statutes contrary to their plain language to avoid an absurd result.

¶ 28 This court has developed a narrow, exacting standard for determining whether to apply the absurdity doctrine and read a statute contrary to its plain meaning. In particular, this court will not

---

[24] *Patterson*, 2011 UT 68, ¶ 14 ("Utah appellate courts have used the words 'issue,' 'claim,' 'argument,' and 'matter' almost interchangeably when stating our preservation rule."); *Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 n.31 (Utah 1993) ("Defendants contend that we should reach this and other new points raised for the first time on appeal because they are really new arguments as opposed to new issues. We decline to honor such a distinction. Our concern is whether an argument was addressed in the first instance to the trial court.").

[25] *Utley v. Mill Man Steel, Inc.*, 2015 UT 75, ¶ 46, 357 P.3d 992 (Durrant, C.J., concurring).

[26] *Id.* ¶ 47 (Durrant, C.J., concurring) (citation omitted).

[27] *Id.* ¶ 46 (Durrant, C.J., concurring). We note that Plaintiffs lifted their absurd result canon test from *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 73, 210 P.3d 263. Significantly, *Encon* quoted a footnote from *State ex rel. Z.C.* in which we distinguished the absurdity doctrine from "[a] related but separate canon of statutory interpretation." 2007 UT 54, ¶ 15 n.5, 165 P.3d 1206. That related canon of statutory interpretation—the absurd consequences canon—"states that when the statutory language plausibly presents the court with two alternative readings, we prefer the reading that avoids absurd results." *Id.*

apply the absurdity doctrine unless "the operation of the plain language . . . [is] so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner."[28] This standard is satisfied only if the legislature could not reasonably have intended the result.[29]

¶ 29 If we determine that the plain language leads to an absurd result, we first consult the express purpose of the statute[30] or, absent a statement of statutory purpose, legislative history[31] to ensure that an absurd result was not intended by the legislature before we apply the doctrine to reform a statute. After all, "the guiding star of the absurd results doctrine is the intent of the pertinent legislative

---

[28] *Utley*, 2015 UT 75, ¶ 48 (Durrant, C.J., concurring); *cf. State ex rel. Z.C.*, 2007 UT 54 ¶ 13, 165 P.3d 1206 ("Other than the directive that a result must be so absurd that the *legislative body* which authored the legislation could not have intended it, there is no precise legal standard to determine what legislatures would consider to be an absurd result." (emphasis added)).

[29] *See Utley*, 2015 UT 75, ¶ 63 (Durrant, C.J., concurring); *cf. Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 30, 267 P.3d 863 (concluding that the statutory result was not "so absurd that the legislative body which authored the legislation could not have intended it" because "we believe the Legislature could reasonably have intended to require parties to use means less intrusive than building a permanent road to transport oil and gas across private property"(citation omitted)); *cf. Pub. Citizens v. U.S. Dep't of Justice*, 491 U.S. 440, 470 (1989) (Kennedy, J., concurring) (concluding that because "Congress could not *possibly* have intended" a "patently absurd consequence[]" created by "the plain language of the statute," the court "need not apply the language in such a fashion" (citations omitted)).

[30] *See Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 28, 163 P.3d 615 (concluding that a party's interpretation of the prejudgment interest statute "leads to an absurd result that controverts the express purposes of the statute").

[31] *State ex rel. Z.C.*, 2007 UT 54, ¶ 21 ("Although we generally do not consult legislative history where the meaning of the statute is clear, after finding that the plain meaning has been applied in an absurd manner, we seek to confirm that the absurd application was indeed unintended by the legislature.").

14

body."[32] If either the statutory purpose or legislative history reveal that the legislature did not intend the absurd result, we will employ the absurdity doctrine only when there is a "non-absurd reading that could be achieved by modifying the enacted text in relatively simple ways."[33]

¶ 30 In this case, neither the wrongful death nor the survival action statutes merit modification under the absurdity doctrine because the legislature could have reasonably intended to allow a person acting as an heir or personal representative to sue him or herself as an individual tortfeasor. Under the wrongful death statute, allowing an heir to sue him or herself as an individual for damages may benefit other heirs.[34] Similarly, under the survival action statute, permitting a personal representative to sue him or herself as an individual for survivor damages may benefit creditors of the estate. The legislature may well have reasoned that courts should allow an heir or personal representative to sue him or herself for the benefit of creditors or heirs when no other party is willing to maintain suit. Because the legislature could have intended to allow such a lawsuit under these statutes, we cannot employ our absurdity doctrine to rewrite the statutes in this case.[35]

¶ 31 Defendant argues against this conclusion by citing several Utah cases that stand for the proposition that a person cannot sue him or herself. But none of these cases rely on that proposition to

---

[32] *Id.* ¶ 12.

[33] *Cox v. Laycock*, 2015 UT 20, ¶ 74, 345 P.3d 689 (Lee, J., concurring) (citation omitted).

[34] *See Switzer v. Reynolds*, 606 P.2d 244, 246 (Utah 1980) (noting that the wrongful death statute provides a single cause of action, and "[w]hether the action be prosecuted by the personal representative or one or more of the heirs, it is for the benefit of all the heirs, and all heirs are bound thereby").

[35] Though we recognize that this case involves a single heir, we cannot rewrite the statute "in relatively simple ways," *Cox*, 2015 UT 20, ¶ 74, to preclude suits in which there is a single heir while permitting suits in which there is more than one heir. When we revise a statute that leads to an absurd result, any revision will not merely affect the party currently before the court, but it will also impact future litigants. We must remain sensitive to these consequences whenever we employ our absurdity doctrine.

rewrite a statute under the absurdity doctrine.[36] Where the legislature could have rationally intended just such a suit in the wrongful death and survival action contexts, we cannot modify the statutes. Relatedly, the *amicus curiae* Utah Defense Lawyers Association offers several arguments to show the practical difficulties that may arise if heirs or personal representatives can sue themselves for tortious conduct. These practical difficulties are surmountable and do not rise to the height of an absurd result that would permit revision of the statutes.[37] Absent an overwhelmingly absurd result, we will not modify the statutes.

---

[36] *See, e.g., Forrer v. Reed*, 560 P.2d 1113, 1115 (Utah 1977) (noting that even though the statute of limitations typically begins to run for minors when a guardian is appointed, in this case, the guardian would need to sue herself, "an illogical and untenable position"); *Fehringer v. Commercial Nat'l Bank of Ogden*, 64 P. 1108, 1109 (Utah 1901) (citing to a California case that precluded an executor, who was also the fraudulent grantee, from suing herself).

[37] The Association submitted novel arguments about the impact this case could have on our adversarial system and our Rules of Professional Conduct. The Association argues, *inter alia*, that this lawsuit distorts the attorney-client relationship by creating a concurrent conflict of interest because "defense counsel's representation of the client as the defendant is directly adverse to defense counsel's representation of that same person who is also the plaintiff." This concurrent conflict, the Association further argues, strains an attorney's ability to communicate with his or her client, because "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." (quoting UTAH R. PROF'L CONDUCT 4.2(a)). Conversely, communications in the other direction, from client to attorney, are also hampered, according to the Association, because the client knows that anything she reveals will be used against her. Relatedly, the Association raises concerns about jury confusion and the ability of an attorney to cross-examine his own client.

These arguments are not without merit but they must ultimately fail. This suit does not create a concurrent conflict. Plaintiffs and Defendant act in different legal roles. Any concern that Ms. Bagley will withhold information from defense counsel that is adverse to the estate's recovery is tempered by Ms. Bagley's requirement to cooperate with her insurer under their insurance agreement and the

(Continued)

¶ 32 Defendant propounds one final set of arguments to urge dismissal of the lawsuit before this court. She specifically encourages us to look beyond the plain language of the statutes to identify legislative intent—which she locates in certain statutes, including the Liability Reform Act (LRA), and the public policy articulated by other states. These legal authorities, Defendant argues, show that the legislature did not intend a negligent heir or personal representative to recover under the wrongful death and survival action statutes. Below, we address and reject these arguments, noting that they rest on a misreading of our precedent and fail to directly address the issue before this court on appeal. In particular, Defendant's legislative intent and public policy arguments do not address whether the statutes at issue in this case permit the suit now before us. Instead, her arguments address whether a plaintiff heir or personal representative, who is also a tortfeasor defendant, may recover wrongful death or survival action damages. That is an issue that the parties and district court may address on remand.

### III. Related Utah Statutes and Public Policies Cited by Defendant Do Not Evince a Legislative Intent to Preclude a Negligent Heir or Negligent Personal Representative from Suing for Damages Under the Wrongful Death or Survival Action Statutes

¶ 33 Citing *Cox v. Laycock*,[38] Defendant claims that "'when a statute is silent regarding particular circumstances' the appellate court 'must determine the best rule of law to ensure that the statute is applied uniformly.'" To adopt the best rule of law, Defendant argues the court must "look outside the plain language of the statute to determine the intent of the legislature." Accordingly, Defendant cites us to related Utah statutory law—including Utah's Slayer

---

district court's inherent powers to manage discovery and ensure that defense counsel obtains relevant, probative evidence necessary to defend against Plaintiffs' causes of action. Similarly, concerns about jury confusion and cross-examination at trial are alleviated by the district court's ability to oversee the prosecution of this lawsuit in a manner that will mitigate these issues. Though this lawsuit raises novel issues regarding the attorney-client relationship and the prosecution of a lawsuit, these issues are manageable and do not create an overwhelming absurdity that requires us to rely on our absurdity doctrine to reform the wrongful death and survival action statutes.

[38] 2015 UT 20, ¶ 42, 345 P.3d 689.

Statute,[39] the LRA,[40] and a motor vehicle insurance provision in Utah's Insurance Statute[41]—to show "that it was *not* the intent of the Utah Legislature to create a wrongful death and/or survival cause of action for a negligent beneficiary." Defendant reinforces this argument by pointing us to relevant public policies articulated by our sister jurisdictions.

¶ 34 We reject Defendant's legislative intent and public policy argument as it relies on an improper understanding of the rule of statutory interpretation set forth in *Cox*. In that case, voters filed a petition under Utah Code sections 20A-4-402 and 20A-4-403 to contest election results.[42] The district court ruled against the election's validity and ordered a new election.[43] The lieutenant governor filed a petition for extraordinary writ challenging the district court's order.[44] This court affirmed the district court's ruling to set aside the election, but reversed its order to hold a new

---

[39] Utah's slayer statute provides that "[a]n individual who commits a disqualifying homicide of the decedent forfeits all benefits under this chapter with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, exempt property, and a family allowance. If the decedent died intestate, the decedent's intestate estate passes as if the killer disclaimed his intestate share." UTAH CODE § 75-2-803(2).

[40] The LRA provides the following: "A person seeking recovery may recover from any defendant or group of defendants whose fault, combined with the fault of persons immune from suit and nonparties to whom fault is allocated, exceeds the fault of the person seeking recovery prior to any reallocation of fault made under Subsection 78B-5-819(2)." UTAH CODE § 78B-5-818(2).

[41] Utah places the following limitation on a recovery under motor vehicle insurance: "Any insurer issuing personal injury protection coverage under this part may only exclude from this coverage benefits: . . . (iii) to any injured person, if the person's conduct contributed to his injury: (A) by intentionally causing injury to himself; or (B) while committing a felony." UTAH CODE § 31A-22-309(2)(a)(iii).

[42] *Cox*, 2015 UT 20, ¶ 6.

[43] *Id.* ¶¶ 8–9.

[44] *Id.*

election.[45] We noted that the statutes provided a procedure to annul a primary election, but did not include a procedure to fill an office thus annulled.[46] From this, we ultimately concluded that the legislature left an unintentional "gap" in the statutes—a gap we filled by consulting "analogous provisions within the election code."[47]

¶ 35 This case unquestionably presents a different situation. Neither the wrongful death nor the survival action statutes contain gaps that the legislature did not intend to create. Both statutes broadly permit an heir or personal representative to sue a wrongdoer for damages.[48] Though they do not *specifically* address whether a person can act simultaneously in different legal capacities as a plaintiff heir or personal representative and individual defendant, they are written in terms that sufficiently encompass and permit such a lawsuit.

¶ 36 Defendant applies *Cox* to this case in a manner that fails to recognize the difference between a statutory gap and statutory silence. In so doing, Defendant construes *Cox* as a judicial license to modify a statute whenever it is "silent regarding particular circumstances."[49] This approach to statutory interpretation would grant courts robust legislative powers to ignore statutory language in order to reach a desired result. We decline to establish such an untenable rule. Accordingly, we distinguish the unique statutory circumstances peculiar to *Cox* from those now before this court. Absent a glaring gap, we will not supply further refinements to the wrongful death and survival action statutes in a manner consonant with "the legislature's probable intent," as Defendant recommends.

---

[45] *Id.* ¶¶ 35, 39.

[46] *Id.* ¶ 41.

[47] *Id.* ("We conclude, however, that the legislature did not intend the vacancy resulting from an annulled primary to continue in perpetuity. We therefore look to analogous provisions within the election code to carry out the legislature's intent."); *cf. Clarkston v. Bridge*, 539 P.2d 1094, 1099–1100 (Or. 1975) (concluding that a party could request a jury trial to determine paternity where a statute authorized a paternity suit but failed to specify whether a party could demand a jury).

[48] *Supra* ¶ 11.

[49] *Cox*, 2015 UT 20, ¶ 42.

¶ 37 For this reason, we will not rely on the Slayer Act, the LRA, or any other related statute to speak more specifically for the Utah Legislature when it chose to speak in more general terms. Nor will we consider the public policy articulated by our sister jurisdictions. The wrongful death and survival action statutes unambiguously allow Ms. Bagley acting as an heir and personal representative to sue herself as an individual for damages.

¶ 38 To the extent Defendant invokes the LRA to argue that dismissal is proper because Plaintiffs cannot recover damages, she did not preserve this issue for appeal by raising it before the district court.[50] In her opening brief, Defendant couched this issue in terms of statutory interpretation, arguing that the LRA, wrongful death, and survival action statutes *conflict*, and that we thus cannot read the latter statutes "to confer a cause of action on [Plaintiffs] when that very same cause of action is barred by comparative negligence principles." Though in form this argument is one of statutory construction, in substance it is an invitation to apply the LRA to bar Plaintiffs' suit. We decline that invitation. When the issue preserved for appeal is the appropriate interpretation of a statute, it is one thing to identify an inconsistency between two related statutes—one of which was not raised before the district court—that requires resolution through statutory interpretation on appeal. It is another thing entirely to argue that a statute that was never brought to the district court's attention and that deals with an issue not preserved for appeal, should apply on appeal to bar recovery.[51]

¶ 39 And even if we construe Defendant's argument as one of statutory interpretation, no conflict between the statutes at issue in this case and the LRA exists.[52] The wrongful death and survival

---

[50] *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 ("An issue is preserved for appeal when it has been 'presented to the district court in such a way that the court has an opportunity to rule on [it].'" (alteration in original) (citation omitted)).

[51] *Id.* ¶ 18 (deciding to rely on a statute not raised before the district court because "we routinely consider new authority relevant to issues that have properly been preserved").

[52] Though Defendant did not raise this particular argument below, we may reach it for the same reason we reached Defendant's absurdity argument: the proper interpretation of the wrongful death and survival action statutes is before us, and harmonizing those statutes with related legislative enactments is integral to that

(Continued)

action statutes create a cause of action that heirs and personal representatives may pursue.[53] By contrast, the LRA precludes "[a] person seeking recovery"[54] from recovering when his or her fault is not exceeded by the combined fault of defendants, nonparties, and parties immune from suit to whom fault is allocated.[55] The former statutes create a cause of action; the latter statute acts as a bar to recovery in particular cases. In some cases, the LRA may bar an heir or personal representative who is also the defendant tortfeasor from recovering—as appears to be the case here. In other cases, the LRA may not bar recovery—as when multiple defendants, including the sole heir, are liable for the death of the decedent and the heir's fault does not exceed the combined fault of all other actors. Accordingly, no conflict between these statutes exists. And because the issue of whether the LRA will apply to bar recovery here is an issue that was not preserved for appeal, the district court should decide it in the first instance on remand.

¶ 40 We also note that as with Defendant's LRA argument, her other legislative intent and public policy arguments outlined above fail to directly address the issue before us on appeal. We granted certiorari on whether the court of appeals erred in holding that sections 78B-3-106(1) and 78B-3-107 of the Utah Code do not preclude persons in their capacities as heirs or personal representatives from bringing suit against the same persons in their capacities as "person[s] causing . . . death" or as "wrongdoer[s]." The related statutes and foreign caselaw cited by Defendant speak to the separate issue of whether a tortfeasor defendant who is permitted to sue as an heir and personal representative of an estate can recover insurance money paid out as damages in a wrongful death or

---

interpretive task. *See supra* ¶ 26; *see also State v. Jeffries*, 2009 UT 57, ¶ 9, 217 P.3d 265 (noting "our duty to read and interpret statutory provisions in harmony with other provisions in the same statute and with other related statutes").

[53] *Supra* ¶ 11.

[54] UTAH CODE § 78B-5-817(4) ("'Person seeking recovery' means any person seeking damages or reimbursement on its own behalf, or on behalf of another for whom it is authorized to act as legal representative.").

[55] *Supra* ¶ 33 n.39.

survival action suit.[56] Defendant's failure to distinguish between these distinct issues—the first, an issue of statutory interpretation; the second, an issue of whether recovery is permissible in cases like the one before us—has caused undue confusion in her arguments. Though we do not reach the second issue in this appeal, the parties may raise the issue on remand.

¶ 41 For the reasons articulated above, Defendant's legislative intent and public policy arguments fail. They rely on a misreading of our precedent and speak to a separate issue, one that we do not address. Accordingly, we conclude that, contrary to Defendant's averments, the court of appeals accurately identified the legislature's intent when it interpreted the plain language of the wrongful death and survival action statutes.

## Conclusion

¶ 42 For the foregoing reasons we hold that the court of appeals did not err when it concluded that the wrongful death and survival action statutes permit a person acting in the legal capacity of an heir or personal representative to sue him or herself in an individual capacity for negligently causing a decedent's death or injury. The plain language of both statutes permits such a lawsuit. Further, the literal terms of the statutes do not lead to an absurd result that would require us to modify the statutory text. And absent a statutory

---

[56] *Tanski v. Tanski*, 820 P.2d 1143, 1144–45 (Colo. App. 1991) (recognizing that the jurisdiction's wrongful death statute permits an heir to sue himself while concluding that public policy prevents the heir from recovering damages); *In re Chase Estate*, 44 Pa. D. & C.3d 34, 40–41 (Pa. Orphans' Ct. 1987) (barring an heir from participating in his wife's estate where the heir wrongfully caused his wife's death, even though the heir's wife's mother acted as administrator of the estate); *Aetna Cas. & Sur. Co. v. Curley*, 585 A.2d 640 (R.I. 1991) (preventing an heir from maintaining suit under the jurisdiction's wrongful death and survival action statutes because her wrongful conduct caused the decedent's death and she was the sole beneficiary of the decedent's estate); *cf. Rozewski v. Rozewski*, 46 N.Y.S.2d 743, 745–47 (Sup. Ct. 1944) (permitting a husband whose negligence caused his wife's death to recover under the wrongful death statute because such recovery did not violate the jurisdiction's public policy).

gap, we will not venture beyond the plain language of the statutes to rewrite them based upon public policy.

―――――――――