*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 8**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

LARRY H. MILLER THEATRES, INC., *et al.*,*
*Petitioners*,

*v.*

UTAH STATE TAX COMMISSION, SALT LAKE COUNTY
BOARD OF EQUALIZATION, *et al.*,*
*Respondents*.

No. 20220345
Heard September 6, 2023
Filed March 7, 2024

On Petition for Review of Agency Decision

Utah State Tax Commission
Judge Jan Marshall
No. 20-2085

Attorneys*:

Steven P. Young, Nathan R. Runyan, Rebecca L. Taylor, Salt Lake,
David J. Crapo, John T. Deeds, Bountiful, for petitioners

Sean D. Reyes, Att'y Gen., Michelle Lombardi, Asst. Att'y Gen.,
Melissa A. Holyoak, Solic. Gen., Stanford E. Purser, Deputy Solic.
Gen., Salt Lake, for respondent Utah State Tax Commission

Sim Gill, Timothy A. Bodily, Bradley C. Johnson, Victoria Turner, Salt
Lake, for respondent Salt Lake County Board of Equalization

---

* Other petitioners in this case are: Omkara, LLC; Shree Ganesh,
LLC; The Ridge LP; Academy Square II, LLC; NNN Jamboree
Promenade, LLC; Kohl's Department Stores, Inc.; Clinton City Center,
LLC; Layton Theater Investment Group LC; Legacy Crossing Theater
LLC; MMP Springville Inc.; A&A Hospitality; Thanksgiving Point-US
D LLC; Wilder Sage Enterprise Properties LLC; Tigriswoods LLC;
National Retail Properties LP; Grand America Hotel Company; Little
America Hotel Company; Larry H. Miller Arena Corp.; The District

LC; CF III SH Valley Fair LLC; Legacy Management Company LLC; Jordan Commons Funding LLC; Municipal Building Authority, Salt Lake City Corp.; Cotton Mill II LC; Sunset Corner Properties LC; and Pineview Plaza LC.

\* Other respondents in this case are: Utah County Board of Equalization, Utah County Assessor, Davis County Board of Equalization, Weber County Board of Equalization, Cache County Board of Equalization, and Washington County Board of Equalization.

\* Other Attorneys: Jeffrey S. Gray, Paul Jones, Provo, for respondent Utah County Board of Equalization; Jeffrey S. Gray, Benjamin Stanley, Provo, for respondent Utah County Assessor; Troy Rawlings, Robert Tripp, Farmington, for respondent Davis County Board of Equalization; Christopher F. Allred, Courtlan Erickson, Ogden, for respondent Weber County Board of Equalization; Dane Murray, K. Taylor Sorensen, Logan, for respondent Cache County Board of Equalization; and Eric W. Clarke, Steven Scott, St. George, for respondent Washington County Board of Equalization.

---

JUSTICE POHLMAN authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, and JUSTICE HAGEN joined.

---

JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1    This case asks us to interpret Utah Code section 59-2-1004.6, which, for ease of reference, we will often refer to as the Access Interruption Statute. This taxation statute allows a property owner to seek an adjustment to a county's assessment of the fair market value of the owner's property if the "property sustains a decrease in fair market value that is caused by access interruption." UTAH CODE § 59-2-1004.6(2). The statute defines "access interruption" as the "interruption of the normal access to or from property" due to circumstances beyond the owner's control, including events such as road construction, vandalism, and adverse weather. *Id.* § 59-2-1004.6(1).

¶2    A motley group of businesses (collectively, Taxpayers)— operating various retail and hospitality-related enterprises—applied for adjustments to the fair market value of their properties for tax year 2020. Taxpayers argued that the COVID-19 pandemic and associated

government-issued guidelines amounted to a circumstance beyond their control for purposes of Utah Code section 59-2-1004.6.

¶3    The Utah State Tax Commission (Commission) rejected this argument for two reasons. First, the Commission concluded that the pandemic was not a qualifying circumstance under the Access Interruption Statute, reasoning that the statute applies only if access was interrupted due to any of thirteen enumerated events or due to a similar event as determined by the Commission via administrative rule. And because the pandemic was neither enumerated by the legislature nor determined by administrative rule, the statute did not apply. Second, the Commission reasoned in the alternative that because the pandemic did not physically impede access to or from Taxpayers' properties, the pandemic was not a qualifying circumstance under the Access Interruption Statute.

¶4    Taxpayers now petition for review of the Commission's decision. They contend that the pandemic qualifies as an "access interruption event" under the Access Interruption Statute because it interrupted normal access to or from their properties and was beyond their control. Taxpayers recognize that the pandemic is not enumerated as a qualifying circumstance either by statute or administrative rule, but they argue that the statute "is broad enough to include the COVID-19 pandemic."

¶5    In contrast, the Commission maintains that the pandemic is not a qualifying event. It first argues that for the Access Interruption Statute to apply, any unenumerated event must be similar to the enumerated events and must be added by the Commission through the rulemaking process. Because the pandemic is not identified in the statute or by rule, the Commission argues that Taxpayers cannot invoke the statute to seek adjustments to the fair market value assessments of their properties. The Commission also argues, in the alternative, that because the pandemic did not physically interrupt access to Taxpayers' properties, the statute does not apply.

¶6    We agree with the Commission on its first rationale, without opining on its alternative rationale or any potential rule on this subject. Thus, we hold that subsection (1)(n) of the Access Interruption Statute allows only the Commission to add to the statute's list of qualifying circumstances if the Commission determines by rule that the additional event is similar to the events enumerated in the statute. We further hold that because the pandemic is not an enumerated event

and has not been added by administrative rule, the Commission's decision is correct.[1]

## BACKGROUND[2]

¶7    On January 31, 2020, the World Health Organization (WHO) declared a global health emergency due to the COVID-19 outbreak. COVID-19 is a respiratory disease caused by a coronavirus strain that previously had not been identified in humans. It can easily spread and lead to serious illness or death.

¶8    In March 2020, the State of Utah declared a state of emergency due to the outbreak. WHO declared COVID-19 a pandemic, and Governor Gary R. Herbert then instructed people to stay home as much as possible, not to gather with others outside of the same household, not to travel to or participate in activities at places of public amusement or activity, and to limit travel to only essential travel. In April, Governor Herbert continued the March directives and added the instruction that people wear face coverings in any place of public accommodation.

¶9    By the end of April, Governor Herbert issued a plan to mitigate the economic consequences of COVID-19 (ULT plan). The ULT plan used color codes for the level of public health risk in the state's counties, and it used phased guidelines, including certain industry-specific guidelines, with varying recommendations. Meanwhile, various counties took local emergency measures to respond to COVID-19. The Utah Department of Health issued a new guide to economic engagement in October 2020. This guide involved restrictions for individuals and businesses based on the weekly

---

[1] Because this case does not follow or arise from an agency decision on any rulemaking petition, the question of whether the pandemic is sufficiently similar to the listed events is not necessary to our opinion, and we do not reach it. We stress that nothing in this opinion should be read to endorse or reject the Commission's conclusion that the pandemic is dissimilar to the circumstances the legislature outlined in the statute.

[2] This petition for review arises from the Commission's decision on cross-motions for summary judgment. When "there are cross-motions for summary judgment, we view the facts in the light most favorable to the losing party." *Rutherford v. Talisker Canyons Fin., Co.*, 2019 UT 27, ¶ 14, 445 P.3d 474 (cleaned up).

number of COVID-19 cases in each county and the statewide availability of intensive care unit beds.

¶10 Against this backdrop, the Utah State Tax Commission issued a July 6, 2020 news release titled, "Property Valuations After COVID-19." The news release explained that, under state law, property is valued as of "January 1st" and that "[b]ecause the COVID-19 pandemic happened after January 1, 2020, if there was any impact to your value, it will not be reflected in the 2020 valuation of your property." The news release continued, "Any impact that may occur such as a decrease in value due to the COVID-19 pandemic, would not be reflected until the 2021 valuation." Notably, the Commission has *not* issued any rule stating that global pandemics or related government orders are events that could cause "access interruption" for purposes of the Access Interruption Statute.

¶11 Taxpayers applied to their county boards of equalization for adjustments in their properties' fair market values under the Access Interruption Statute for tax year 2020. Taxpayers operate various enterprises, such as hotels, movie theaters, and retail stores, and they represent a variety of businesses identified in the ULT plan. Taxpayers asserted that they had "reduced income attributable to the ongoing pandemic" and that their properties had, since January 1, 2020, sustained decreases in fair market value that were caused by "access interruption." In Taxpayers' view, "the COVID-19 pandemic and its attendant government-imposed restrictions" caused access interruption in accordance with Utah Code section 59-2-1004.6, entitling them to adjustments in the fair market values of their properties.

¶12 The majority of the county boards of equalization denied Taxpayers' applications.[3] Taxpayers then appealed to the Commission. The respondents (collectively, Counties) and Taxpayers agreed to consolidate the appeals with respect to the common legal issue, but they stipulated that "with respect to factual issues, including individual valuation issues, the appeals will not be consolidated but will proceed individually for consideration by the Commission once the common legal issue has been addressed." Accordingly, the Commission consolidated the numerous appeals for the limited purpose of "deciding the legal, statutory interpretation issue."

---

[3] The boards of equalization for Utah and Iron counties allowed for a fair market value adjustment under the Access Interruption Statute. The Utah County Assessor appealed to the Commission, but the Iron County Assessor did not.

¶13 Both sides moved for summary judgment, and the Commission ultimately granted summary judgment to the Counties on two grounds. First, although the Access Interruption Statute allows for the possibility that "any circumstance beyond the control of the owner" could interrupt access to a property, the Commission reasoned that section 59-2-1004.6 is not without limit. Specifically, the Commission concluded that if a circumstance (like the pandemic) is not enumerated in the statute, it is not a qualifying event unless it is both similar to the enumerated events and has been identified as a qualifying event by Commission rule. It explained that the Access Interruption Statute requires that additional qualifying events can be added only by rulemaking, which "ensure[s] uniform application of these circumstances by the counties." Alternatively, the Commission reasoned that because the pandemic did not create an impediment to physically accessing Taxpayers' properties, the pandemic did not interrupt access and thus the statute did not apply. Taxpayers jointly seek judicial review of the Commission's decision.

## ISSUE AND STANDARD OF REVIEW

¶14 Taxpayers contend that the Commission erred in concluding that the COVID-19 pandemic is not a qualifying event under the Access Interruption Statute. "We review the Commission's statutory interpretations for correctness, granting no deference to its conclusions of law." *Summit Operating, LLC v. Utah State Tax Comm'n*, 2012 UT 91, ¶ 7, 293 P.3d 369; *see also* UTAH CODE § 59-1-610(1)(b) ("When reviewing formal adjudicative proceedings commenced before the commission, the Court of Appeals or Supreme Court shall: . . . grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court."). "Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Summit Operating*, 2012 UT 91, ¶ 7 (cleaned up).

## ANALYSIS

¶15 The sole issue before us is the correct interpretation of the Access Interruption Statute. After we set forth the principles that guide our interpretation, we place the statute in context. We then analyze the statute accordingly and hold that the plain language of subsection (1)(n) of the Access Interruption Statute allows only the Commission to add to the statute's list of circumstances if the Commission determines by administrative rule that the additional event is similar to the events listed in the statute. And we conclude that because the

pandemic is not listed in the statute and has not been added to the list by rule, the Commission did not err in granting summary judgment to the Counties.

## I. THE ACCESS INTERRUPTION STATUTE ALLOWS FOR AN ADJUSTMENT IN FAIR MARKET VALUE WHEN PROPERTY SUSTAINED A DECREASE IN FAIR MARKET VALUE DUE TO ACCESS INTERRUPTION

¶16 Our primary objective when we interpret a statute "is to ascertain the intent of the legislature." *Summit Operating, LLC v. Utah State Tax Comm'n*, 2012 UT 91, ¶ 11, 293 P.3d 369 (cleaned up). "[T]he best evidence of the legislature's intent is the plain language of the statute itself," and we construe "each part or section . . . in connection with every other part or section so as to produce a harmonious whole." *Id.* (cleaned up). We thus "interpret statutes to give meaning to all parts, and avoid rendering portions of the statute superfluous." *Id.* (cleaned up). "When we can ascertain the intent of the legislature from the statutory terms alone, no other interpretive tools are needed . . . ." *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (cleaned up). We now turn to the statutory issue before us.

¶17 In Utah, "[a]ll tangible taxable property located within the state shall be assessed and taxed at a uniform and equal rate on the basis of its fair market value, as valued on January 1, unless otherwise provided by law." UTAH CODE § 59-2-103(2). Thus, the amount of property taxes usually depends on the fair market value of the property as of January 1. *Id.*

¶18 The Access Interruption Statute, under the Property Tax Act,[4] is an exception. It provides that "if, during a calendar year, property sustains a decrease in fair market value that is caused by access interruption, the owner of the property may apply . . . for an adjustment in the fair market value of the owner's property as provided in Subsection (4)." *Id.* § 59-2-1004.6(2).

¶19 To obtain an adjustment under the Access Interruption Statute, the property owner has "the burden of proving, by a preponderance of the evidence: (i) that the property sustained a decrease in fair market value, during the applicable calendar year, that *was caused by access interruption*; (ii) the amount of the decrease in fair market value . . . ; and (iii) that the decrease . . . is not due to the action or inaction of the applicant." *Id.* § 59-2-1004.6(4)(c) (emphasis added).

---

[4] The Property Tax Act is codified at Title 59, Chapter 2 of the Utah Code. *See* UTAH CODE §§ 59-2-101 to -1906.

¶20 Most relevant here, the Access Interruption Statute states, "For purposes of this section 'access interruption' means interruption of the normal access to or from property due to any circumstance beyond the control of the owner, including: (a) road construction; (b) traffic diversion; (c) an accident; (d) vandalism; (e) an explosion; (f) fire; (g) a flood; (h) a storm; (i) a tornado; (j) winds; (k) an earthquake; (l) lightning; (m) any adverse weather event; or (n) any event similar to the events described in this Subsection (1), as determined by the commission by rule made in accordance with Title 63G, Chapter 3, Utah Administrative Rulemaking Act." *Id.* § 59-2-1004.6(1).

## II. BECAUSE THE PANDEMIC IS NOT A QUALIFYING CIRCUMSTANCE UNDER THE ACCESS INTERRUPTION STATUTE, THE COMMISSION CORRECTLY GRANTED SUMMARY JUDGMENT

¶21 Taxpayers challenge the Commission's interpretation of the Access Interruption Statute, asserting that the "COVID-19 pandemic qualifies as access interruption." Embedded in this framing is a threshold question—whether the statute recognizes the pandemic as a "circumstance beyond the control of the owner" that interrupted "normal access to or from property." *See* UTAH CODE § 59-2-1004.6(1). This threshold question must be answered in the affirmative to bring the Access Interruption Statute into play and to give a property owner the opportunity to meet its burden under subsection (4)(c) of the statute. *See supra* ¶ 19.

¶22 Taxpayers do not suggest that the pandemic fits into the plain language of any of the legislatively enumerated circumstances that potentially interrupt access. *See* UTAH CODE § 59-2-1004.6(1)(a)–(m). The pandemic is not, for instance, road construction, vandalism, or an adverse weather event. *See id.* Thus, this case ultimately boils down to whether and how the list of qualifying circumstances can be expanded.

¶23 As to the first inquiry, there's no debate that the list may be expanded. The parties agree that the statute's list of qualifying circumstances is not exhaustive. After all, "access interruption" is defined as the "interruption of the normal access to or from property due to any circumstance beyond the control of the owner, *including*" the enumerated events. *Id.* § 59-2-1004.6(1) (cleaned up) (emphasis added). The legislature has instructed that generally its use of the term "including" in statutes "means that the items listed are not an exclusive list, unless the word 'only' or similar language is used to expressly indicate that the list is an exclusive list." *Id.* § 68-3-12(1)(f). And we have similarly recognized that the term "is routinely construed as introducing a non-exclusive, exemplary list." *Graves v.*

*N.E. Servs., Inc.*, 2015 UT 28, ¶ 53, 345 P.3d 619. Thus, the legislature's use of "including" shows its intent for the enumerated events to be a non-exclusive list of qualifying circumstances. *See id.*[5]

¶24  But that conclusion does not end our analysis. We next must answer *how* the list can be expanded. Here, the legislature has provided a specific means for expanding the list.

¶25 Subsection (1)(n) provides that besides the thirteen enumerated events, "'access interruption' means interruption of the normal access to or from property due to any circumstance beyond the control of the owner, including . . . any event similar to the [listed] events . . . , as determined by the commission by rule made in accordance with Title 63G, Chapter 3, Utah Administrative Rulemaking Act." UTAH CODE § 59-2-1004.6(1)(n). The Access Interruption Statute thus allows for the list of circumstances to grow *and* dictates a specific avenue for doing so. The Commission, however, has not taken that avenue here. It has not promulgated a rule adding the pandemic as a circumstance that could interrupt access.

¶26  Still, Taxpayers ask us to hold that the pandemic "is an access interruption event under the plain language" of the Access Interruption Statute, which they assert "is broad enough to include the COVID-19 pandemic, *regardless of the Commission's failure to promulgate the same in* [*a*] *rule*." (Emphasis added.) This we cannot do. Nor could the county boards of equalization for that matter. The statute's plain language tells us how "any event similar to" the listed events is added as a "circumstance beyond the control of the owner": an addition is accomplished "by the commission by rule made in accordance with . . . [the rulemaking procedures of the] Utah Administrative Rulemaking Act." UTAH CODE § 59-2-1004.6(1)(n). Stated differently, to be considered a qualifying circumstance, the Access Interruption Statute requires *the Commission* to determine whether the additional event is a "circumstance beyond the control of the owner" similar to the events delineated by the legislature and to promulgate a rule to that effect

---

[5] In *Graves*, we concluded that the word "including" in the statutory definition of "fault" provided support for construing the comparative fault statute to include intentional torts. 2015 UT 28, ¶¶ 48–49, 53 (citing UTAH CODE § 78B-5-817(2)). As we explain, *infra* ¶¶ 24–26, the Access Interruption Statute's subsection (1)(n), unlike the fault definition, specifies *who* may expand the statutory list. *Compare* UTAH CODE § 78B-5-817(2), *with id.* § 59-2-1004.6(1)(n). The path for expansion here goes to the Commission through the rulemaking process, not to this court through statutory interpretation.

through the rulemaking process.[6] *See id.* We cannot simply declare the pandemic a circumstance for purposes of the Access Interruption Statute, usurp the Commission's role, and thereby overlook subsection (1)(n)'s plain language. *See Summit Operating, LLC v. Utah State Tax Comm'n*, 2012 UT 91, ¶ 11, 293 P.3d 369 (explaining that we construe "each part or section" of a statute "in connection with every other part or section so as to produce a harmonious whole" (cleaned up)).

¶27 In sum, the Commission correctly granted summary judgment to the Counties. Given that the Commission has not made a rule adding the pandemic as a circumstance beyond the control of a property owner that is similar to those events identified in the statute, we conclude the pandemic is not an event that currently brings the Access Interruption Statute into play. *See* UTAH CODE § 59-2-1004.6(1). In so doing, we express no opinion on any potential administrative rule designating the pandemic as a qualifying circumstance under subsection 59-2-1004.6(1)(n).

## CONCLUSION

¶28 We hold that Utah Code subsection 59-2-1004.6(1)(n) permits only the Commission to add to the legislatively enumerated events that put the Access Interruption Statute into play, provided that the additional event is similar to the enumerated events and the Commission makes the determination through the rulemaking process. Because the pandemic is not an enumerated event and has not been added as a qualifying event by rule, we allow the Commission's award of summary judgment to the Counties to stand.

--------

[6] The Utah Administrative Rulemaking Act allows interested persons to "petition an agency to request the making, amendment, or repeal of a rule." UTAH CODE § 63G-3-601(2). *See generally* UTAH ADMIN. CODE R15-2. In light of that process and subsection (1)(n)'s language pointing to the Act, we are not at liberty to allow Taxpayers to avoid that step and have us interpret section 59-2-1004.6 in a manner that would deprive the Commission of its role under the Access Interruption Statute.