**2024 UT App 149**

## THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ADOPTION OF R.P. AND S.P.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

S.Z. AND S.Z.,
Appellants,
*v.*
S.B. AND H.B.,
Appellees.

Opinion
No. 20230120-CA
Filed October 18, 2024

Eighth District Court, Vernal Department
The Honorable Gregory Lamb
No. 222800008

Emily Adams, Freyja Johnson, Sara Pfrommer, and
Anna Grigsby, Attorneys for Appellants

James K. Tracy, Stacy J. McNeill, Hyrum J.
Bosserman, and KC Hooker,
Attorneys for Appellees

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

LUTHY, Judge:

¶1     This case concerns the proposed adoption of twelve-year-old R.P. and ten-year-old S.P. (collectively, the Children). The Children's paternal grandmother, S.Z. (Paternal Grandmother), and her husband, S.Z. (Paternal Grandfather) (collectively, Paternal Grandparents), filed a petition for adoption, commencing this case. The Children's maternal grandmother, S.B. (Maternal Grandmother), intervened in the case. Maternal Grandmother and her husband, H.B. (collectively, Maternal

Grandparents), subsequently filed their own petition for adoption, commencing a second adoption proceeding. Paternal Grandmother failed to intervene in that second proceeding, and due to that failure, Maternal Grandmother filed a motion for partial summary judgment in this adoption case, asserting that Paternal Grandmother failed to comply with the Utah Adoption Act, Utah Code sections 78B-6-101 to -146 (the Adoption Act). The district court concluded that Paternal Grandparents are barred from participating in their own adoption proceeding "because they did not timely intervene" in Maternal Grandparents' adoption proceeding, and it granted partial summary judgment in favor of Maternal Grandparents.[1] Paternal Grandmother challenges the summary judgment ruling, arguing that the district court's strict application of the Adoption Act yields an absurd

---

1. Maternal Grandmother's motion for partial summary judgment sought dismissal of Paternal Grandmother's claims only, noting, "This is a partial summary judgment motion because it is only directed to [Paternal Grandmother's] claims, not the claims of her co-petitioner, [Paternal Grandfather]." The court's summary judgment order nevertheless addressed Paternal Grandparents collectively throughout its analysis and concluded, "[Paternal Grandparents] are barred from participating in this adoption matter because they did not timely intervene according to the statutory requirements. Consequently, [Maternal Grandparents'] Motion for Partial Summary Judgment is granted." Because only Paternal Grandmother has petitioned for interlocutory review, we need not decide whether the court's ruling amounted to a sua sponte grant of summary judgment against Paternal Grandfather, and this appeal resolves only the grant of summary judgment as to Paternal Grandmother. To the extent that the court's grant of summary judgment did apply to Paternal Grandfather, he may appeal that order upon entry of a final judgment.

result. We agree with Paternal Grandmother and reverse the grant of partial summary judgment as to her.

## BACKGROUND

¶2     After the Children lost their parents in a helicopter accident in 2019, their two grandmothers were appointed as their co-guardians, with a shared visitation schedule. However, the relationship between the grandmothers was difficult, and in early 2021, Paternal Grandmother petitioned the district court to terminate Maternal Grandmother as a co-guardian of the Children. The district court dismissed Paternal Grandmother's termination petition, determining that Paternal Grandmother (1) "failed to make any allegations . . . or provide any evidence that [Maternal Grandmother] is unfit or otherwise unsuitable to serve as guardian"; (2) "failed to provide any evidence showing that this current arrangement is not in the best interests of the [C]hildren"; and (3) "failed to allege . . . or provide evidence of the existence of a substantial and material change in circumstance" because, although it was "undisputed that communication was strained" between the grandmothers and that they had "been involved in litigation" with each other, those conditions were true prior to their appointments as co-guardians.

¶3     Shortly thereafter, in November 2021, Paternal Grandparents filed a petition for adoption of the Children, which commenced the instant case. As required by statute, Paternal Grandparents served notice of their adoption petition on Maternal Grandmother. *See* Utah Code § 78B-6-110(2) ("Notice of an adoption proceeding shall be served on . . . any legally appointed custodian or guardian of the adoptee . . . ."). In response, Maternal Grandmother filed a timely motion to intervene in Paternal Grandparents' adoption proceeding. *See id.* § 78B-6-110(6)(a) ("A person who has been served with notice of an adoption proceeding and who wishes to contest the adoption

shall file a motion to intervene in the adoption proceeding . . . within 30 days . . . ."). The district court eventually granted Maternal Grandmother's motion to intervene.

¶4     Around the same time that Maternal Grandmother moved to intervene in Paternal Grandparents' adoption proceeding, Maternal Grandparents filed their own petition for adoption, commencing a second adoption proceeding. This second adoption proceeding was filed in the same court and assigned to the same judge who was presiding over Paternal Grandparents' adoption proceeding. Maternal Grandparents served Paternal Grandmother with notice of their adoption petition, both through email to Paternal Grandparents' counsel and through regular mail to Paternal Grandmother. Each notice advised Paternal Grandmother as to the statutory result for failing to respond to the notice and intervene in the adoption proceeding, saying:

> If you do not file a Motion to Intervene within 30 days after this notice is served on you, you:
>
> - Waive any right to further notice in this adoption;
>
> - Forfeit all rights in relation to the adoptee; and
>
> - Are barred from bringing or maintaining any action to assert any interest in the adoptee.

*See generally id.* § 78B-6-110(6)(b) (setting forth the legal consequences of failing to timely intervene in an adoption proceeding after receiving notice, including being "barred from thereafter bringing or maintaining any action to assert any interest in the adoptee"). Nonetheless, Paternal Grandmother did not move to intervene in Maternal Grandparents' adoption proceeding.

¶5 Maternal Grandmother moved to consolidate the two adoption proceedings with the earlier guardianship case. And Paternal Grandparents moved to simply consolidate the two adoption proceedings. The district court granted Maternal Grandmother's motion and transferred both adoption proceedings to the judge presiding over the guardianship case. Almost immediately after receiving the adoption cases, the receiving judge struck the consolidation order, determining that although he would preside over all three cases, the adoption cases would proceed as "separate and independent cases."

¶6 Following the entry of this order striking the consolidation order, Maternal Grandparents again served Paternal Grandmother with notice of their adoption proceeding, once more warning Paternal Grandmother of the consequences of failing to intervene in the proceeding. Again, Paternal Grandmother failed to intervene.

¶7 As a result, Maternal Grandmother filed a motion for partial summary judgment in Paternal Grandparents' adoption case, arguing that Paternal Grandmother's adoption petition should be dismissed with prejudice: "Because [Paternal Grandmother] has failed to meet the statutory deadlines to intervene in [Maternal Grandparents'] adoption proceedings, she has forfeited any rights in the Children and is barred from bringing *or maintaining* any action, including these proceedings, or asserting any interest in the Children." The district court agreed and granted partial summary judgement, concluding, "[Paternal Grandparents] are barred from participating in this adoption matter because they did not timely intervene [in Maternal Grandparents' adoption proceeding] according to the statutory requirements."

¶8 Paternal Grandmother thereafter petitioned this court for permission to appeal the interlocutory partial summary judgment decision, and this court granted that petition.

ISSUE AND STANDARD OF REVIEW

¶9 Paternal Grandmother challenges the district court's grant of partial summary judgment based on its application of the Adoption Act. "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (cleaned up). Likewise, "the proper interpretation and application of a statute is a question of law reviewed for correctness." *State v. Robertson*, 2017 UT 27, ¶ 14, 438 P.3d 491 (cleaned up).[2]

ANALYSIS

¶10 Paternal Grandmother argues that the district court erred by strictly applying a provision of the Adoption Act to effectively dismiss her adoption petition due to her failure to intervene in Maternal Grandparents' adoption proceeding. The provision at issue, Utah Code section 78B-6-110(6) (the Intervention Provision), provides as follows:

> (a) A person who has been served with notice of an adoption proceeding and who wishes to contest the adoption shall file a motion to intervene in the adoption proceeding:

---

2. Paternal Grandmother also argues that the district court "should not have stricken the consolidation order." However, this argument was not raised in Paternal Grandmother's petition for interlocutory review, and we therefore do not address it. *See Houghton v. Department of Health*, 2005 UT 63, ¶ 16, 125 P.3d 860 ("On interlocutory appeal, we review only those specific issues presented in the petition.").

(i) within 30 days after the day on which the person was served with notice of the adoption proceeding;

(ii) setting forth specific relief sought; and

(iii) accompanied by a memorandum specifying the factual and legal grounds upon which the motion is based.

(b) A person who fails to fully and strictly comply with all of the requirements described in Subsection (6)(a) within 30 days after the day on which the person was served with notice of the adoption proceeding:

(i) waives any right to further notice in connection with the adoption;

(ii) forfeits all rights in relation to the adoptee; and

(iii) is barred from thereafter bringing or maintaining any action to assert any interest in the adoptee.

Utah Code § 78B-6-110(6). The "notice of an adoption proceeding" referred to in the Intervention Provision must be served on a specific list of individuals, including "any legally appointed custodian or guardian of the adoptee." *Id.* § 78B-6-110(2). The list does not include grandparents or other extended family members of the adoptee. *See id.*

¶11 "When interpreting a statute, we look first to its plain language and presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." *Boyle v. Christensen*, 2011 UT 20, ¶ 27, 251 P.3d

810 (cleaned up). Generally, "if the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed." *Id.* (cleaned up).

¶12    The plain meaning of the Intervention Provision is clear. It requires that an individual who receives notice under the statute of an adoption proceeding and wishes to contest the referenced adoption *must* move to intervene in that adoption proceeding within thirty days of receiving notice. *See* Utah Code § 78B-6-110(6)(a); *see also Paar v. Stubbs*, 2005 UT App 310, ¶ 7, 117 P.3d 1079 ("'Shall' is commonly understood to create a mandatory condition . . . ."). The Intervention Provision also makes clear that a notice recipient "who fails to fully and strictly comply with" the intervention requirement may not thereafter "bring[] or maintain[] any action to assert any interest in the adoptee." Utah Code § 78B-6-110(6)(b). We see no ambiguity in the statutory language; indeed, in their appellate arguments, the parties assert no ambiguity in the statutory language. Hence, under the plain language of the Intervention Provision, Paternal Grandmother, who was served with notice of Maternal Grandparents' adoption petition but who did not timely move to intervene in Maternal Grandparents' adoption proceeding, would be precluded from maintaining her own adoption proceeding.

¶13    "Normally, where the language of a statute is clear and unambiguous, our analysis ends; our duty is to give effect to that plain meaning. However, an equally well-settled caveat to the plain meaning rule states that a court should not follow the literal language of a statute if its plain meaning works an absurd result." *In re Z.C.*, 2007 UT 54, ¶ 11, 165 P.3d 1206 (cleaned up); *see also Bagley v. Bagley*, 2016 UT 48, ¶ 27, 387 P.3d 1000 (explaining that the absurdity doctrine "reforms unambiguous statutory language where the language would lead to an absurd result" (cleaned up)). And that is what Paternal Grandmother contends here—that

applying the plain meaning of the Intervention Provision leads to an absurd and unsupportable result.[3]

¶14    Our supreme court "has developed a narrow, exacting standard for determining whether to apply the absurdity doctrine and read a statute contrary to its plain meaning." *Bagley*, 2016 UT 48, ¶ 28. This standard provides that we will apply the absurdity doctrine only when "the operation of the plain language is so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner." *Id.* (cleaned up). That is, "[t]his standard is satisfied only if the legislature could not reasonably have intended the result." *Id.* And when determining whether the legislature could have reasonably intended the result, we are particularly mindful of "the intent of the pertinent legislative body," which is "the guiding star of the absurd results doctrine." *In re Z.C.*, 2007 UT 54, ¶ 12. *See generally id.* ("Rather than controverting legislative power, the absurd results doctrine functions to preserve legislative intent when it is narrowly applied."). Even under this exacting standard, the Intervention Provision—when applied to the particular circumstances of this case—merits modification under the absurdity doctrine.

---

3. Maternal Grandparents argue that Paternal Grandmother's absurdity doctrine argument was not raised below and was therefore not preserved for appeal. Additionally, on appeal, Paternal Grandmother did not develop her absurdity doctrine argument until her reply brief. However, because the proper interpretation and application of the Intervention Provision is squarely before us, the potential application of the absurdity doctrine is properly before us as well. *See Bagley v. Bagley*, 2016 UT 48, ¶ 26, 387 P.3d 1000 ("Defendant's absurd result argument does not raise a wholly new issue. . . . Where the best reading of [certain] statutes is directly before us on appeal, an absurdity analysis is an integral extension of our interpretive task.").

¶15 We first identify a circumstance under which application of the Intervention Provision does *not* yield an absurd result. That circumstance is where persons who have not filed their own adoption petition receive notice that someone else has filed an adoption petition and then fail to timely intervene in that adoption proceeding. In such a circumstance, the Intervention Provision precludes the persons who received notice and failed to timely intervene from thereafter initiating their own adoption proceeding. We believe that the legislature could have reasonably intended this result. The legislature might very well have determined to place the interest that adoptive children have in receiving a prompt and definitive resolution of their familial status ahead of the remote possibility that a person who is unable to timely conjure up and act upon a desire to adopt the child might turn out to be the best adoptive placement for the child.

¶16 A circumstance more similar to the situation in this case presents a closer call on the question of whether application of the Intervention Provision yields an absurd result. That circumstance is where spouses who are *both* serving as guardians of the adoptive children first file their own adoption petition and then both receive notice that someone else has also initiated an adoption proceeding and the spouses subsequently fail to timely intervene in the other adoption proceeding. On the one hand, one might argue—with some force—that the legislature could have reasonably intended to require persons filing competing adoption petitions to promptly intervene in each other's proceeding—regardless of which one was commenced first—so that the various individuals involved in each case, including judges, are aware of all asserted interests in the children. This is so especially because it is entirely possible that competing adoption petitions might be filed in different judicial districts in the state and therefore be assigned to different judges. On the other hand, one might also argue—again with some force—that if it really "is the intent and desire of the Legislature that in every adoption the best interest of

the child should govern and be of foremost concern in the court's determination," Utah Code § 78B-6-102(1), then that same legislature would not have also reasonably intended to preclude from consideration for adoption the very types of persons— namely, those already serving as guardians and who have filed their own adoption petition—who might very well prove to be the best adoptive placement for the child. Ultimately, because this is not the circumstance presented to us here, we need not decide whether application of the Intervention Provision to such circumstance produces an absurd result.

¶17 The circumstance presented to us here is one in which spouses (namely, Paternal Grandparents), one of whom is already serving as a guardian of the adoptive children, filed an adoption petition; the spouse entitled to notice of a competing adoption petition (namely, the guardian spouse, Paternal Grandmother) then received notice of such a petition; and the spouse entitled to notice failed to intervene in the competing adoption proceeding. Strict application of the Intervention Provision in this circumstance requires a ruling that prohibits the guardian spouse (Paternal Grandmother) from maintaining her adoption petition while allowing the non-guardian spouse (Paternal Grandfather) to continue to pursue adoption. We can identify no logical or principled reason for such a regime, and we do not believe that our legislature reasonably intended for the Intervention Provision to operate in this manner.[4]

---

4. We are aware that the district court found that both Paternal Grandmother and Paternal Grandfather were served with notice of Maternal Grandparents' adoption proceeding and failed to intervene in that proceeding. On that basis the court concluded that the Intervention Provision barred both Paternal Grandparents from participating in their own adoption proceeding. Based on the district court's findings and analysis

(continued…)

related to Paternal Grandfather, there would be no differential treatment of Paternal Grandmother and Paternal Grandfather, thus avoiding the absurd result we identify here. However, there are two problems with the district court's findings and analysis in this regard.

First, we question whether Maternal Grandmother's notice, which was addressed only to Paternal Grandmother, could properly serve as notice to Paternal Grandfather as well, even if both Paternal Grandparents lived at the same location when the notice was served or were both represented by the same attorney to whom the notice was emailed.

Second, and more importantly, we conclude that the Intervention Provision does not apply to persons—like Paternal Grandfather—who are not entitled to the notice mandated by Utah Code section 78B-6-110. Admittedly, at first blush the Intervention Provision's language "[a] person who has been served with notice of an adoption proceeding" appears to apply generally to any person who receives notice. Utah Code § 78B-6-110(6). However, section 78B-6-110 otherwise addresses only those who are entitled to notice and what *they* are required to do to preserve their rights to bring and maintain an adoption proceeding. Specifically, section 78B-6-110 first sets forth the persons who must be given notice; grandfathers are not included in the list. *See id.* § 78B-6-110(1)–(3). Section 78B-6-110 then mandates when "[t]he notice required by this section" must be served and what information "[t]he notice required by this section" must include. *Id.* § 78B-6-110(5). It further directs how "notice under this section shall be made." *Id.* § 78B-6-110(7). But section 78B-6-110 gives no instructions regarding how or when notice *not* required by this section must be served or what information notice *not* required by this section should include. Because section 78B-6-110 provides no such guidance—which guidance would be essential for determining whether a person

(continued…)

¶18 In sum, we conclude that application of the plain language of the Intervention Provision works an absurd result in the narrow circumstances of this case. We therefore hold that when a married couple is the first to file an adoption petition and only one of the spouses is entitled to notice of a subsequently initiated

---

not entitled to notice has received notice sufficient to trigger the intervention requirement of the Intervention Provision—we conclude that the Intervention Provision is not applicable to persons who, like Paternal Grandfather, are not entitled to the notice that section 78B-6-110 mandates. *See State v. Maestas*, 2002 UT 123, ¶ 54, 63 P.3d 621 ("Each part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole." (cleaned up)). Thus, application of the Intervention Provision as written yields in cases like this the absurd result we have identified, notwithstanding the district court's apparent ruling to the contrary.

Moreover, our reaching the issue of the Intervention Provision's inapplicability to persons who, like Paternal Grandfather, are not entitled to notice under section 78B-6-110 is appropriate here, despite the fact that Paternal Grandfather has not appealed the court's decision as to him, because resolution of this issue is necessary to the proper resolution of Paternal Grandmother's appeal. *Cf. In re B.T.B.*, 2020 UT 60, ¶ 40, 472 P.3d 827 ("[T]he parties cannot force a court into a strained interpretation of a statute by the arguments they advance. A court's duty is to get the law right and parties cannot push us off that path."). In light of our conclusion regarding the inapplicability of the Intervention Provision to persons not entitled to notice under section 78B-6-110, the district court would be well advised, before it issues a final judgment, to revisit the ruling in its summary judgment order that purports to apply the Intervention Provision to Paternal Grandfather and thereby bar his further participation in this matter.

adoption proceeding, that spouse need not comply with the intervention requirement of the Intervention Provision.

CONCLUSION

¶19 Because the absurdity doctrine is triggered under the narrow circumstances of this case, we hold that the Intervention Provision does not apply to Paternal Grandmother. Accordingly, we conclude that the district court erred in granting partial summary judgment against her, and we remand this matter for such further proceedings as may now be appropriate.

_____