*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2026 UT 9**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Adoptions of R.P. and S.P.,
persons under eighteen years of age

S.Z.,
*Respondent,*

*v.*

S.B. and H.B.,
*Petitioners.*

No. 20241337
Heard January 26, 2026
Filed April 23, 2026[*]

On Certiorari to the Utah Court of Appeals

Eighth District Court, Uintah County
The Honorable Gregory Lamb
No. 222800008

Attorneys:

Emily Adams, Sara Pfrommer, Anna Grigsby, Bountiful,
for respondent

James K. Tracy, Stacy J. McNeill, Hyrum J. Bosserman,
KC Hooker, Salt Lake City, for petitioners

JUSTICE HAGEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE PETERSEN,
ASSOCIATE CHIEF JUSTICE POHLMAN, and JUSTICE NIELSEN joined.

---

[*] As of January 31, 2026, "The Supreme Court consists of seven
justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme
Court Standing Order No. 18, this court sat and rendered judgment
in this matter as a division of five justices.

JUSTICE HAGEN, opinion of the Court:

## INTRODUCTION

¶1   Utah law imposes strict limits on a third party's ability to challenge an adoption. *See* UTAH CODE § 81-13-207(6). Relevant here, the Utah Adoption Act provides that a "person who has been served with notice of an adoption proceeding and who wishes to contest the adoption shall file a motion to intervene in the adoption proceeding" within thirty days of receiving notice. *Id.* § 81-13-207(6)(a)(i). The statute warns that a "person who fails to fully and strictly comply with" the obligation to intervene "forfeits all rights in relation to the adoptee" and "is barred from thereafter bringing or maintaining any action to assert any interest in the adoptee." *Id.* § 81-13-207(6)(b)(ii)–(iii).

¶2   This case concerns two actions to adopt R.P. and S.P., who lost their parents in a helicopter accident in 2019. The children's maternal and paternal grandmothers were both appointed as co-guardians. Eventually, the children's paternal grandmother, S.Z. (Paternal Grandmother), and her husband, S.Z. (Paternal Grandfather) (collectively, Paternal Grandparents) filed a petition to adopt the children. The children's maternal grandmother, S.B. (Maternal Grandmother), intervened in that adoption proceeding. She, along with her husband, H.B. (collectively, Maternal Grandparents), later filed their own petition to adopt the children. Paternal Grandmother received notice of Maternal Grandparents' adoption petition, but she did not intervene.

¶3   Eventually, Maternal Grandmother moved for summary judgment, arguing that Paternal Grandmother should be barred from pursuing her adoption petition because she failed to intervene in Maternal Grandparents' adoption proceeding. The district court agreed and granted the motion, barring both Paternal Grandmother and Paternal Grandfather. Paternal Grandmother petitioned for interlocutory review, and the court of appeals granted her petition.

¶4   The court of appeals reversed. Although it held that the plain language of the intervention provision barred Maternal Grandmother from maintaining her adoption petition, the court held that the district court's application of the intervention provision produced an absurd result. Specifically, the court thought it absurd that Paternal Grandmother—who was a co-guardian entitled to notice of Maternal Grandparents' petition—would be barred from asserting an interest in the children, but her

2

non-guardian spouse—who was not entitled to notice under the Act—would not be.

¶5 We granted certiorari and now reverse. As an initial matter, we agree with the court of appeals that the plain language of the intervention provision of the Adoption Act bars Paternal Grandmother from maintaining her own adoption petition. But the court of appeals' application of the absurdity doctrine was based on a false premise. Specifically, the court assumed that Paternal Grandfather could maintain his adoption petition, when in fact, the district court had barred both Paternal Grandparents from maintaining their petition. In other words, the court of appeals' absurdity doctrine analysis incorrectly rested on a hypothetical circumstance.

¶6 Finally, we reject Paternal Grandmother's alternative ground for affirmance in which she argues that barring her from maintaining her own first-in-time adoption petition is absurd. The result is not absurd because the legislature could have reasonably determined that a strict intervention requirement should be imposed on all contestants in adoption proceedings—even for first-in-time petition filers. There is nothing absurd about requiring a party who has already filed an adoption petition to intervene when notified of a competing petition. Doing so ensures that the parties and courts involved in each case are aware of every asserted interest in the adoptees. The result here is not so overwhelmingly absurd that we may depart from the plain language of the statute.

## BACKGROUND

¶7 Following the deaths of their parents, a court appointed the children's grandmothers as co-guardians with a shared visitation arrangement. During this shared arrangement, tensions arose between the grandmothers. Eventually, Paternal Grandparents filed a petition to adopt the children. Maternal Grandmother filed a motion to intervene in Paternal Grandparents' adoption proceeding, and the district court granted that motion.

¶8 Maternal Grandparents then filed their own petition for adoption. They served notice of their petition on Paternal Grandparents' counsel by email and on Paternal Grandmother by regular mail. This notice informed Paternal Grandmother that if she wanted to contest the adoption, she must file a motion to intervene in Maternal Grandparents' adoption proceeding within thirty days. *See* UTAH CODE § 81-13-207(6). The notice warned Paternal Grandmother that if she failed to timely intervene, she

would "[w]aive any right to further notice in this adoption," would "[f]orfeit all rights in relation to the adoptee," and would be "barred from bringing or maintaining any action to assert any interest in the adoptee." *See id.* § 81-13-207(6)(b). Paternal Grandmother did not file a motion to intervene in Maternal Grandparents' adoption proceeding.

¶9 The two adoption cases were consolidated and transferred to another court within the same district. But the receiving court promptly entered an order striking the consolidation and ruled that the two adoption proceedings would continue as "separate and independent cases." After the cases were deconsolidated, Maternal Grandparents again served notice on Paternal Grandmother, apprising her of her right to intervene and the consequences for failing to do so. Paternal Grandmother did not file a motion to intervene.

¶10 Maternal Grandmother eventually moved for partial summary judgment in Paternal Grandparents' adoption proceeding, arguing that Paternal Grandmother should be barred from pursuing her adoption petition. Maternal Grandmother expressly "directed" her motion to Paternal Grandmother's "claims" and "not the claims of her co-petitioner, [Paternal Grandfather]." In that motion, she argued that Paternal Grandmother failed to timely intervene in Maternal Grandparents' adoption case, as required by the intervention provision of the Adoption Act, thereby forfeiting her rights to adopt the children and barring her from maintaining her own adoption petition.

¶11 Paternal Grandmother opposed the motion and raised several arguments. As relevant to this appeal, Paternal Grandmother argued that the two adoption proceedings "are the same case," which makes "separate interventions nonsensical." She argued that she was not required to intervene in Maternal Grandparents' adoption proceeding, but she did not dispute that she had received notice of Maternal Grandparents' adoption proceeding and did not intervene.

¶12 The district court rejected Paternal Grandmother's arguments and granted Maternal Grandmother's motion for summary judgment. The court first explained that the two adoption proceedings are not "just one action" because the court "deliberately chose not to consolidate the cases" when it struck the consolidation order and "ordered the adoption matters to continue as 'separate and independent cases.'"

¶13   Turning to the Adoption Act, the district court explained that the intervention provision requires a "person who has been served with notice of an adoption proceeding and who wishes to contest the adoption [to] file a motion to intervene in the adoption proceeding . . . within 30 days." (Quoting UTAH CODE § 81-13-207(6)(a)(i).)[1] And the court explained that a "party who has received notice and 'fails to fully and strictly comply with all of the requirements . . . within 30 days . . . forfeits all rights in relation to the adoptee[,] and is barred from thereafter bringing or maintaining any action to assert any interest in the adoptee.'" (Quoting *id.* § 81-13-207(6)(b)(ii)–(iii).) The court found that Paternal Grandmother received notice of Maternal Grandparents' adoption petition but did not intervene in that proceeding. Consequently, the court concluded that the "statutory language clearly bars" both Paternal Grandmother and Paternal Grandfather "from participating in [their] adoption proceeding because they failed to intervene as required by statute."

¶14   Paternal Grandmother petitioned for interlocutory review, framing the "primary issue" as "whether the requirements of [the intervention provision of the Adoption Act] must be strictly complied with by" Paternal Grandparents when they had filed a petition for adoption before Maternal Grandparents had filed their petition in the same court. The court of appeals granted review.

¶15   In her opening brief to the court of appeals, Paternal Grandmother argued, among other things, that the purpose of the intervention provision is "to establish the rights of the intervenor to make a claim and to give notice of their intention to participate" in the adoption proceeding. She argued that she satisfied that purpose because she had "already announced her claim and her intentions with respect [to] the adoption of [the children] by filing her own petition for adoption." She further argued that her dismissal from the case "ignore[d] the intent and purpose of the strict compliance requirement, which is to ensure that strangers to an adoption proceeding are given a hard deadline to indicate their desire to participate." She thus argued that "hypertechnical compliance" with the intervention provision led "to an

---

[1] While the 2022 version of the Utah Code applies and the legislature has made some subsequent changes to the code, no substantive changes are applicable here, nor do any of the changes impact our analysis. Thus, we cite the current version of the code throughout this opinion for both convenience and clarity.

unsupportable result," namely, that "a prior-in-time adoption petition was effectively dismissed."

¶16    In her reply brief, Paternal Grandmother shifted tack and argued for the first time that "the district court's application" of the intervention provision led "to absurd results." Specifically, Paternal Grandmother argued that "the legislature expressed an explicit" intent that in every adoption "'the best interest of the child should govern and be of foremost concern in [a] court's determination.'" (Citing *id.* § 81-13-202(1).) Considering this purpose, she argued that "the legislature [could not] possibly have intended that a co-guardian's prior-in-time adoption petition could be effectively dismissed, and their rights to any interest in the adoptees forfeited, because they did not timely intervene in a separate and subsequently filed case."

¶17    The court of appeals reversed. The court began by interpreting the intervention provision and concluding that the plain language is "clear" with "no ambiguity." *In re Adoption of R.P.*, 2024 UT App 149, ¶ 12, 559 P.3d 977. The court explained that this provision "requires that an individual who receives notice under the statute of an adoption proceeding and wishes to contest the referenced adoption *must* move to intervene in that adoption proceeding within thirty days of receiving notice." *Id.* And the court explained that a person "who fails to fully and strictly comply with the intervention requirement may not thereafter bring or maintain any action to assert any interest in the adoptee." *Id.* (cleaned up). The court determined that "under the plain language" of the intervention provision, "Paternal Grandmother, who was served with notice of Maternal Grandparents' adoption petition but who did not timely move to intervene in Maternal Grandparents' adoption proceeding, would be precluded from maintaining her own adoption proceeding." *Id.*

¶18    But the court then held that the intervention provision produced an absurd result in this case because Paternal Grandmother would be barred from pursuing her petition while Paternal Grandfather would not. *Id.* ¶¶ 17–18.[2] To reach that

---

[2] The court of appeals rejected Maternal Grandparents' argument that the absurdity doctrine issue was waived or unpreserved. *In re Adoption of R.P.*, 2024 UT App 149, ¶ 13 n.3, 559 P.3d 977. The court explained that "because the proper interpretation and application" of the intervention provision "is

(continued . . .)

conclusion, the court first held that Paternal Grandfather was not entitled to notice under the intervention provision because "grandfathers are not included in the list" of persons who must receive notice under the statute. *Id.* ¶ 17 n.4. And the court explained that the intervention provision includes multiple references to "notice required by this section," but it "gives no instructions regarding how or when notice *not* required by this section must be served or what information notice *not* required by this section should include." *Id.* The court then held that because Paternal Grandfather was not entitled to notice, he was not required to intervene or subject to the consequences for failing to do so. *Id.* In other words, the court held that Paternal Grandfather could not be barred from maintaining his adoption petition. *Id.* With this premise in place, the court held that "[s]trict application" of the intervention provision here required "a ruling that prohibits the guardian spouse (Paternal Grandmother) from maintaining her adoption petition while allowing the non-guardian spouse (Paternal Grandfather) to continue to pursue adoption." *Id.* ¶ 17. The court could "identify no logical or principled reason for such a regime." *Id.*

¶19 While engaging in this analysis, the court of appeals acknowledged that the intervention provision's harsh consequences had a legitimate rationale. *Id.* ¶ 16. Specifically, the court explained that the "legislature could have reasonably intended to require persons filing competing adoption petitions to promptly intervene in each other's proceeding—regardless of which one was commenced first—so that the various individuals involved in each case, including judges, are aware of all asserted interests in the children." *Id.* "This is so," the court continued, "especially because it is entirely possible that competing adoption petitions might be filed in different judicial districts in the state and therefore be assigned to different judges." *Id.* Despite this observation, the court ruled that the intervention provision—as applied to Paternal Grandmother in this case—produced an absurd result requiring reversal because it treated Paternal Grandmother less favorably than her non-guardian spouse. *Id.* ¶¶ 17–19.

---

squarely before [it], the potential application of the absurdity doctrine is properly before [it] as well." *Id.* For purposes of this review we assume, without deciding, that the court of appeals' analysis as to waiver and issue preservation is correct.

¶20   Yet the court of appeals acknowledged that the district court had, in fact, barred Paternal Grandfather from maintaining his adoption petition. *Id.* ¶ 17 n.4. Given that ruling, "no differential treatment of Paternal Grandmother and Paternal Grandfather" actually resulted from the district court's analysis, thereby "avoiding the absurd result" that the court of appeals had identified. *Id.* The court further acknowledged that Paternal Grandfather had not appealed the summary judgment order as applied to him. *Id.* But the court nevertheless held that it was "appropriate" to address whether the intervention provision applied to Paternal Grandfather "because resolution of this issue is necessary to the proper resolution of Paternal Grandmother's appeal." *Id.* Even though Paternal Grandfather did not appeal, the court instructed the district court that it "would be well advised, before it issues a final judgment, to revisit the ruling in its summary judgment order that purports to apply" the intervention provision "to Paternal Grandfather and thereby bar[s] his further participation in this matter." *Id.*

¶21 Maternal Grandparents filed a petition for writ of certiorari. We granted review.

## ISSUE AND STANDARD OF REVIEW

¶22   The parties dispute whether the intervention provision of the Adoption Act bars Paternal Grandmother from maintaining her adoption petition. "On a writ of certiorari, we review the decision of the court of appeals, not that of the district court, and apply the same standard of review used by the court of appeals." *Prinsburg State Bank v. Abundo*, 2012 UT 94, ¶ 10, 296 P.3d 709 (cleaned up). In doing so, "we grant no deference to the court of appeals' decision." *Pinney v. Carrera*, 2020 UT 43, ¶ 14, 469 P.3d 970. The interpretation of the Adoption Act is a question of law, which we review for correctness. *See Bearden v. Croft*, 2001 UT 76, ¶ 5, 31 P.3d 537 ("Correctness is . . . the standard for review of questions of statutory interpretation.").

## ANALYSIS

¶23   Maternal Grandparents challenge the court of appeals' decision holding that the intervention provision of the Adoption Act produced an absurd result in this case and reversing the district court's entry of summary judgment in their favor. They argue that the plain language of the intervention provision bars Paternal Grandmother from maintaining her adoption petition and that the court of appeals erred in applying the absurdity doctrine. We agree.

¶24 We begin our analysis by interpreting the plain language of the intervention provision as applied to Paternal Grandmother. In this analysis, we consider and reject Paternal Grandmother's argument that the competing petitions provision of the Adoption Act should control in this case rather than the intervention provision. Next, we turn to the absurdity doctrine and explain how the court of appeals erred in its analysis. Finally, we assess and reject Paternal Grandmother's additional absurdity doctrine argument, which she offers as an alternative ground to affirm the court of appeals.

I. THE INTERVENTION PROVISION BARS PATERNAL GRANDMOTHER FROM MAINTAINING HER ADOPTION PETITION

¶25 The Adoption Act imposes an obligation on persons to intervene in an adoption proceeding if they are served with notice and wish to contest the adoption. *See* UTAH CODE § 81-13-207(6). To ensure that interested persons can "intervene in the adoption" and "present evidence to the court relevant to the best interest of the child adoptee," the intervention provision requires that certain persons be served with notice of the adoption proceeding. *Id.* § 81-13-207(11). Persons entitled to notice include "any legally appointed custodian or guardian of the child adoptee." *Id.* § 81-13-207(1)(c).

¶26 Persons on notice of the adoption proceeding are required to intervene or lose the right to challenge the adoption. Specifically, the intervention provision instructs: "A person who has been served with notice of an adoption proceeding and who wishes to contest the adoption shall file a motion to intervene in the adoption proceeding" within thirty days of receiving notice. *Id.* § 81-13-207(6)(a). The consequences for failing to intervene are stark. *See id.* § 81-13-207(6)(b). The provision warns that a "person who fails to fully and strictly comply with" the obligation to intervene "(i) waives any right to further notice in connection with the adoption; (ii) forfeits all rights in relation to the adoptee; and (iii) is barred from thereafter bringing or maintaining any action to assert any interest in the adoptee." *Id.*

¶27 It is undisputed that Paternal Grandmother received notice of Maternal Grandparents' adoption proceeding and failed to intervene in that proceeding. But she argues that the intervention provision does not apply to her because another provision of the Adoption Act controls—the competing petitions provision. *See id.*

§ 81-13-215(8)–(9).[3] That provision states, in part, that when a court has "jurisdiction over a minor child for whom more than one petition for adoption is filed," the court "shall grant a hearing" if the petitioner "has custody or guardianship of the minor child." *Id.* § 81-13-215(8)(a)(ii). Paternal Grandmother argues that the competing petitions provision is the more specific statute that governs this situation and that it guarantees petitioners in both cases a hearing on the merits.

¶28   Our task then is to determine whether the intervention provision applies even when there are competing adoption petitions. When we interpret a statute, "our primary objective is to ascertain the intent of the legislature." *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (cleaned up). "Because the best evidence of the legislature's intent is the plain language of the statute itself, we look first to the plain language of the statute." *Id.* (cleaned up). In doing so, "we presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." *Id.* (cleaned up). When interpreting a statute, "we do not view the operative statutory language in isolation." *Anderson v. Utah Dep't of Com.*, 2025 UT 19, ¶ 15, 572 P.3d 373. Instead, "we look at the provisions in the context of the entire statutory scheme." *Hertzske v. Snyder*, 2017 UT 4, ¶ 10, 390 P.3d 307. "To arrive at the correct interpretation, each part or section must be construed in connection with every other part or section so as to

---

[3] Paternal Grandmother did not make this argument to the court of appeals. But she did make a related argument that courts must hold a hearing to consider the merits of competing adoption petitions under our decision in *In re C.C.*, 2013 UT 26, ¶ 47, 301 P.3d 1000. The court of appeals did not address this argument. *See In re Adoption of R.P.*, 2024 UT App 149, ¶¶ 10–18. Paternal Grandmother now points specifically to the competing petitions provision, which she asserts "was enacted to recognize the Court's concerns" in *In re C.C.* We treat this as an argument to affirm the court of appeals on an alternative basis, *see Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (recognizing that we may affirm "on any legal ground or theory apparent on the record" (cleaned up)), and consider the competing petitions provision as part of our holistic interpretation of the statute, *see State v. Andrus*, 2025 UT 32, ¶ 64, 575 P.3d 1071 (recognizing that "we read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters" (cleaned up)).

produce a harmonious whole." *Anderson*, 2025 UT 19, ¶ 15 (cleaned up).

¶29   We start with the language of the intervention provision, which states that a "person who has been served with notice of an adoption proceeding and who wishes to contest the adoption *shall file* a motion to intervene in the adoption proceeding." UTAH CODE § 81-13-207(6)(a) (emphasis added). We have explained that the "legislature's use of the word 'shall' in statutes creates mandatory obligations." *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 27, 367 P.3d 994. And that is true here. The word "shall" in the intervention provision imposes a mandatory obligation on a person who has been served with adequate notice to intervene in an adoption proceeding if the person wants to contest the adoption. Failure "to fully and strictly comply with" the obligation results in the person "forfeit[ing] all rights in relation to the adoptee" and being "barred from thereafter bringing or maintaining any action to assert any interest in the adoptee." UTAH CODE § 81-13-207(6)(b)(ii)–(iii).

¶30   The plain language of the statute contemplates situations involving competing adoption petitions. By failing to intervene, the person is barred from "bringing or maintaining *any action* to assert *any interest* in the adoptee," and the person "forfeits *all rights* in relation to the adoptee." *Id.* (emphases added); *see also Graves v. N. E. Servs., Inc.*, 2015 UT 28, ¶ 52 & n.4, 345 P.3d 619 (discussing the "broad, encompassing import of" the word "any" and collecting cases interpreting the term broadly). By its nature, an adoption proceeding is an "action" to assert an "interest in the adoptee[s]" and falls squarely within the statute's expansive language. *See* UTAH CODE § 81-13-207(6)(b)(iii).

¶31   And the statute bars a person who fails to intervene not only from "bringing" such an action, but also from "maintaining" one. *Id.* The word "maintain" contemplates that an action has already been filed or is pending. *See Maintain*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "maintain" as "[t]o continue (something)"). "Wherever possible, we give effect to every word of a statute, avoiding any interpretation which renders parts or words in a statute inoperative or superfluous." *State v. Stewart*, 2018 UT 24, ¶ 12, 438 P.3d 515 (cleaned up). If we interpret the intervention provision to not apply to first-in-time filers, such a reading would render the word "maintaining" a surplusage and inoperative. The intervention provision not only bars a person from later filing—or

"bringing"—an action but also contemplates that a person may be barred from continuing—or "maintaining"—an existing action.

¶32   We conclude that, on its face, the intervention provision's bar on "bringing or maintaining any action to assert any interest in the adoptee," requires termination of "any action to assert any interest in the adoptee," even a petition for adoption that has already been filed or is pending. *See* UTAH CODE § 81-13-207(6)(b)(iii).

¶33   But Paternal Grandmother argues that a more specific provision in the Adoption Act trumps the intervention provision. *See In re Adoption of M.A.*, 2024 UT 6, ¶ 14, 545 P.3d 241 ("Where there is an inconsistency between related statutory provisions, the specific provision controls over the general." (cleaned up)). Specifically, she argues that unlike the intervention provision, the competing petitions provision "expressly mentions situations where more than one adoption petition exists" and states that the court "shall grant a hearing" when more than one adoption petition is filed and the petitioner has guardianship of the child. Paternal Grandmother maintains that "[n]othing" in the competing petitions provision "requires petitioners—who have already filed an adoption petition—to comply with" the intervention provision "to maintain their right to a hearing."

¶34   Our task is to construe the Adoption Act as a coherent whole. *See Taylor v. Taylor*, 2022 UT 35, ¶ 28, 517 P.3d 380 ("We read the plain language of the statute as a whole and interpret its provisions in harmony with other statutes in the same chapter and related chapters." (cleaned up)). The way to harmonize the two provisions, Maternal Grandparents argue, is that when "more than one petition for adoption is filed," a court "shall grant a hearing only if" there are two petitions that have otherwise satisfied critical prerequisites of the Adoption Act. And if a petitioner fails to "satisfy statutory prerequisites to maintaining a petition—such as by not moving to intervene after receiving notice," the competing petitions provision "would not apply because the court is no longer dealing with two valid petitions." Maternal Grandparents argue that "[t]his interpretation gives full effect to both" provisions.

¶35   We agree with Maternal Grandparents; the two provisions exist in harmony. The intervention provision requires that a person on notice must "fully and strictly comply with" the obligation to intervene to maintain a petition for adoption. UTAH CODE § 81-13-207(6)(b). Nothing in the competing petitions

provision expressly overrides that requirement or any other prerequisite for maintaining an adoption petition. *See id.* § 81-13-215(8)–(9). In other words, the competing petitions provision does not require the court to hold a hearing on a petition that independently fails under another provision of the Adoption Act. As a co-guardian, Paternal Grandmother was entitled to a hearing on her competing petition but only if she complied with all other relevant parts of the Adoption Act, including the intervention provision. Because she did not do so, the district court was not required to hold a hearing on the barred petition.

¶36 For these reasons, we hold that the intervention provision is not inconsistent with the competing petitions provision of the Adoption Act in this case. Paternal Grandmother was required to intervene in Maternal Grandparents' adoption proceeding, and the district court correctly interpreted the statute when it barred Paternal Grandmother from maintaining her adoption petition.

II. THE DISTRICT COURT'S APPLICATION OF THE INTERVENTION PROVISION DID NOT PRODUCE AN ABSURD RESULT

¶37 Maternal Grandparents argue that the court of appeals erred by applying the absurdity doctrine rather than applying the plain language of the intervention provision. "It is a well-settled principle of statutory construction that a court looks first to the plain language of the statute when interpreting meaning . . . ." *Arnold v. Dep't of Workforce Servs.*, 2021 UT 27, ¶ 11, 491 P.3d 957 (cleaned up). "When the meaning of a statute can be discerned from its language, no other interpretive tools are needed." *Anderson v. Utah Dep't of Com.*, 2025 UT 19, ¶ 14, 572 P.3d 373 (cleaned up).

¶38 But in rare cases, "the absurdity doctrine dictates that a court should not follow the literal language of a statute if its plain meaning works an absurd result." *Arnold*, 2021 UT 27, ¶ 11 (cleaned up).[4] This doctrine has been described as "a drastic step" or "strong

---

[4] We note here the distinction between the absurd consequences canon of statutory interpretation and the absurdity doctrine. The absurd consequences canon "merely resolves an ambiguity by choosing the reading that avoids absurd results." *Bagley v. Bagley*, 2016 UT 48, ¶ 27, 387 P.3d 1000 (cleaned up). "The absurdity doctrine, by contrast, has nothing to do with resolving ambiguities." *Utley v. Mill Man Steel, Inc.*, 2015 UT 75, ¶ 46, 357 P.3d 992 (Durrant, C.J., concurring in part on behalf of the majority).

(continued . . .)

medicine, not to be administered lightly," and therefore must be handled with "caution." *Utley v. Mill Man Steel, Inc.*, 2015 UT 75, ¶ 48, 357 P.3d 992 (Durrant, C.J., concurring in part on behalf of the majority) (cleaned up). We are guarded with this doctrine because "when a statute is unambiguous, the statutory language is almost always irrefutable evidence of the legislature's intent, even if it leads to results we regard as impractical or ill-advised." *Id.* For this reason, we have "developed a narrow, exacting standard for determining whether to apply the absurdity doctrine." *Bagley v. Bagley*, 2016 UT 48, ¶ 28, 387 P.3d 1000. We will apply it only if "the operation of the plain language is so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner." *Id.* (cleaned up).

¶39 In this case, we address two absurdity doctrine arguments. First, we review the court of appeals' conclusion that it would be absurd for the intervention provision to bar Paternal Grandmother from maintaining her adoption petition while Paternal Grandfather could maintain his. *In re Adoption of R.P.*, 2024 UT App 149, ¶ 17, 559 P.3d 977. Second, we consider Paternal Grandmother's alternative argument that it would be absurd for the intervention provision to bar a guardian and first-in-time petition filer from maintaining her adoption petition for failure to intervene. We reject both rationales for applying the absurdity doctrine because the intervention provision does not produce an overwhelmingly absurd result under the facts of this case.

   A. *The Court of Appeals Erred Because Its Absurdity Analysis Was Not Based on the Actual Result that the District Court Reached by Applying the Intervention Provision*

¶40 Maternal Grandparents contend that the court of appeals erred when it applied the absurdity doctrine and concluded that the intervention provision should not bar Paternal Grandmother's adoption petition. *In re Adoption of R.P.*, 2024 UT App 149, ¶ 17. Specifically, the court held that it would be absurd for the intervention provision to bar Paternal Grandmother from

---

Even when the meaning of the statute is unambiguous, the absurdity doctrine ignores the plain language to avoid an "overwhelmingly" absurd result. *Id.* In this case, the court of appeals applied the absurdity doctrine after concluding that the plain language of the intervention provision was "clear" with "no ambiguity." *In re Adoption of R.P.,* 2024 UT App 149, ¶ 12, 559 P.3d 977.

maintaining her adoption petition while leaving Paternal Grandfather free to maintain his. *Id.* To reach that conclusion, the court first observed that Paternal Grandfather was not entitled to notice under the intervention provision. *Id.* ¶ 17 n.4. Because he was not entitled to notice, the court concluded that he was not required to intervene in Maternal Grandparents' adoption proceeding and thus could not be barred from maintaining his adoption petition.[5] *Id.* Reasoning from that premise, the court held that "[s]trict application" of the intervention provision required "a ruling that prohibits the guardian spouse (Paternal Grandmother) from maintaining her adoption petition while allowing the non-guardian spouse (Paternal Grandfather) to continue to pursue adoption." *Id.* ¶ 17. The court held that it could "identify no logical or principled reason for such a regime." *Id.*

¶41    But this conclusion was not based on the actual result that the district court reached by applying the intervention provision. The court of appeals applied the absurdity doctrine as if Paternal Grandfather had been allowed to continue his adoption petition, when in fact, the district court had barred both Paternal Grandparents from maintaining their petition. The district court did not distinguish between Paternal Grandmother and Paternal Grandfather in finding that they had received notice, had an obligation to intervene under the Adoption Act, and failed to do so. And the district court entered summary judgment against both of them. The court of appeals acknowledged as much when it stated that there was "no differential treatment of Paternal Grandmother and Paternal Grandfather" in the district court's analysis "thus avoiding the absurd result" that the court of appeals identified. *Id.* ¶ 17 n.4.

¶42    The court of appeals' absurdity analysis turned on a hypothetical circumstance, a circumstance where Paternal Grandfather was *not* subject to the consequences of the intervention provision and therefore *not* barred from maintaining his action. *Id.* But the absurdity doctrine cannot nullify a statute's application based on a hypothetical circumstance—that is, one in which the

---

[5] We express no opinion on whether this legal conclusion was correct. We vacate the court of appeals' holding on this point because it was error to engage in the analysis. *See State v. Johnson*, 2026 UT 6, ¶ 21, __P.3d __ (explaining that "[w]hen a decision is reversed on a predicate ground, the lower court's ruling on the merits is necessarily vacated").

statute *might cause* an absurd result—if the statute does not *actually cause* an absurd result in the instant case. "Even if we can conceive of scenarios where the statute the Legislature enacted might produce an absurd result, we do not stray from the statute's text in a case where the application of the Act in the case before us does not lead to an absurd result." *Scott v. Benson*, 2023 UT 4, ¶ 61, 529 P.3d 319 (applying the absurd consequences canon); *see State v. Sanders*, 2019 UT 25, ¶ 54 & n.13, 445 P.3d 453 (rejecting an absurdity doctrine argument based on "hypothetical circumstances" that were not grounded in the facts of the case). We need not determine whether the hypothetical posed by the court of appeals would meet the "exacting standard" the absurdity doctrine requires, because the court of appeals' analysis was not tethered to the facts of this case. *See Bagley*, 2016 UT 48, ¶ 28.

¶43 We hasten to add that we understand the challenge the court of appeals faced given the unusual posture of this case on appeal. Maternal Grandmother's motion for summary judgment was expressly "directed to [Paternal Grandmother's] claims, not the claims of her co-petitioner, [Paternal Grandfather]," yet the district court lumped them together in its analysis and granted summary judgment against both Paternal Grandparents. Still, Paternal Grandfather did not appeal the summary judgment ruling that barred him from maintaining his adoption petition. The interlocutory appeal that followed was limited to the ruling against Paternal Grandmother. An appellate court must "take the case as it comes." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 203 n.4 (2014). And in this case, the question before the court of appeals was whether the district court correctly applied the intervention provision of the Adoption Act to Paternal Grandmother. Taking the "drastic step" of applying the absurdity doctrine to avoid a result that did not actually occur in this case was error. *See Utley*, 2015 UT 75, ¶ 48 (Durrant, C.J., concurring in part on behalf of the majority).

B. *Paternal Grandmother's Preclusion from Her Adoption Petition Is Not an Absurd Result under the Intervention Provision of the Adoption Act*

¶44 Paternal Grandmother offers an alternative ground to affirm the court of appeals, arguing that it would be absurd for the intervention provision to bar a guardian and first-in-time petition filer from maintaining her adoption petition for failing to intervene. She points to the "express purposes of the Adoption Act" which are meant "to ensure the best interests of the child," and argues that the "legislature could not have reasonably intended" the

intervention provision to bar her petition "because that would remove a potentially ideal adoptive home from consideration." "In contrast," she argues, the specific purpose of the intervention provision is to enable individuals to "intervene in an adoption." (Citing UTAH CODE § 81-13-207(11).) Against this backdrop, she argues that "the legislature could not reasonably have intended" that a co-guardian and conservator of the children "who first filed an adoption petition would be excluded from participating in all adoption proceedings" for failing to intervene in a later-filed adoption proceeding with the same judge.

¶45 But there is a rational explanation for applying the intervention provision in these circumstances. And "if we find a rational explanation for the plain language of a statute, the absurdity doctrine will not apply and we will follow the plain language." *Arnold*, 2021 UT 27, ¶ 14. The legislature could have reasonably determined that imposing a strict intervention requirement would help ensure that all parties interested in the adoptees are brought to the table in each proceeding. The court of appeals acknowledged as much, explaining that the "legislature could have reasonably intended to require persons filing competing adoption petitions to promptly intervene in each other's proceeding—regardless of which one was commenced first—so that the various individuals involved in each case, including judges, are aware of all asserted interests in the children." *In re Adoption of R.P.*, 2024 UT App 149, ¶ 16. "This is so," the court continued, "especially because it is entirely possible that competing adoption petitions might be filed in different judicial districts in the state and therefore be assigned to different judges." *Id.*

¶46 Even when, as here, the judge in both cases is the same, the intervention provision serves a more specific function than merely alerting the court to a person's interest in adopting a child: it requires an interested party to contest an adoption action by participating *in that action* rather than merely pursuing a competing action. Under the Adoption Act's statutory scheme, the filing of an adoption petition does not serve the same function as intervening to contest another person's adoption proceeding. *See* UTAH CODE §§ 81-13-207(6)(a), -204. The intervention provision, by its plain language, requires parties to intervene specifically to *contest* an adoption proceeding. *See id.* § 81-13-207(6)(a) (imposing the obligation to intervene on a "person . . . *who wishes to contest* the adoption" (emphasis added)). And by successfully intervening, the intervenor then acquires the ability to challenge another party's

adoption petition and present evidence of the best interest of the child in that proceeding. *See id.* § 81-13-207(11) (stating that the "sole purpose of notice under this section is to enable the person served" to "intervene in the adoption" and "present evidence to the court relevant to the best interest of the child adoptee"). As we have explained in other contexts, "[i]ntervention is the act by which a third party obtains standing to become a party in a suit. It has been described as a method by which an outsider with an interest in an action may enter and participate as a party." *In re E.H.*, 2006 UT 36, ¶ 51, 137 P.3d 809. So, the statutory intervention process here is designed to provide a person the means to enter another person's adoption proceeding as a challenging party, and that purpose is not accomplished when a person simply files their own adoption petition, even if they are first to file. *See* UTAH CODE § 81-13-207(6), (11). This function of the statute is rational, and we cannot nullify the intervention requirement merely because the more general purpose of the statutory scheme might still be accomplished even if we depart from the text of the statute. Further, filing a motion to intervene is not a high burden, and as an existing co-guardian, Paternal Grandmother's intervention in Maternal Grandparents' case was to be had for the asking.

¶47    We recognize that Paternal Grandmother's preclusion is a harsh result. But that does not mean the result is absurd. As explained "when a statute is unambiguous, the statutory language is almost always irrefutable evidence of the legislature's intent, even if it leads to results we regard as impractical or ill-advised." *Utley*, 2015 UT 75, ¶ 48 (Durrant, C.J., concurring in part on behalf of the majority). The statute here unambiguously warns that a "person who fails to fully and strictly comply with" the obligation to intervene "forfeits all rights in relation to the adoptee" and "is barred from thereafter bringing or maintaining any action to assert any interest in the adoptee." UTAH CODE § 81-13-207(6)(b)(ii)–(iii). And the strict obligation to intervene is balanced by the strict notice requirements. *See id.* § 81-13-207(1)–(5). The statute requires not only that persons, like Paternal Grandmother, be provided notice of the adoption proceeding, but further requires the notice to warn the recipient of the consequences for failing to timely intervene. *See id.* § 81-13-207(1), (5)(a)–(b). The required notice with the express warning language was provided to Paternal Grandmother at least twice in this case. Despite the harsh result, we cannot conclude that the result is overwhelmingly absurd, especially when the legislature took pains to ensure that interested parties were clearly warned of the consequences for failing to intervene.

¶48   More generally, harsh consequences may flow from a number of procedural mechanisms in our rules and the Utah Code. *See, e.g.*, *In re Adoption of A.B.*, 2010 UT 55, ¶ 37, 245 P.3d 711 (acknowledging that the dismissal of an appeal for failing to comply with Utah's notice of appeal requirements in an adoption case was a "harsh consequence[]" but noting that the appeal deadlines are meant to "swiftly and permanently resolve child custody issues"). The absurdity doctrine does not permit a court to avoid applying the plain language of the statute when the results seem unfair or even unnecessary to accomplish the apparent statutory purpose. A statutory scheme that seems unduly harsh in isolation may produce a desirable result overall when applied consistently. And, in any event, it is "not the duty of this Court to assess the wisdom of the statutory scheme." *W. Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982).

¶49   For these reasons, we hold that the intervention provision of the Adoption Act did not produce an overwhelmingly absurd result in this case. Therefore, we decline to affirm the court of appeals on the alternative ground Paternal Grandmother argues.

## CONCLUSION

¶50   We hold that the plain language of the intervention provision prevents Paternal Grandmother from maintaining her adoption petition. We overturn the court of appeals' decision to reverse the summary judgment ruling because its absurdity doctrine analysis was based on a hypothetical situation rather than the actual result that the district court reached by applying the intervention provision. We also reject Paternal Grandmother's argument to affirm on an alternative ground. We remand for other proceedings consistent with this opinion.

———————